**COMMONWEALTH of Pennsylvania, Appellee,**

v.

**Daniel DAVIS, Appellant.**

Superior Court of Pennsylvania.

Argued Oct. 22, 1997.

Filed Dec. 16, 1997.

---

Paul P. Ackourey, Scranton, for appellant.

William P. O'Malley, Asst. Dist. Atty., Scranton, for Com., appellee.

Before McEWEN, President Judge, BECK, J., and CERCONE, President Judge Emeritus.

BECK, Judge:

In this appeal we decide, *inter alia*, whether the sentencing court erred in imposing separate sentences for the convictions of conspiracy to commit robbery and conspiracy to commit third-degree murder. We find that pursuant to 18 Pa.C.S.A. § 903(c) the sentences should merge and the court erred in imposing separate sentences. We therefore remand for resentencing.

Before addressing the sentencing question we decide whether the trial court erred in precluding appellant from presenting certain witness testimony and whether appellant was prejudiced by admission of a pre-trial identification.

Appellant was found guilty of third-degree murder and related offenses. Armed with a baseball bat, appellant and several of his friends sought out the victim with the intention of collecting a drug debt. Following a brutal attack by appellant and the others, the victim died. Appellant was the only person to face trial; his cohorts pled guilty to third-degree murder. A jury found appellant guilty of third-degree murder, conspiracy to commit third degree murder and conspiracy to commit robbery. He received separate, consecutive sentences for each charge, resulting in an aggregate prison term of fourteen (14) to forty (40) years.

■ Appellant claims that he was precluded from presenting the testimony of two witnesses who would have testified in his favor. Appellant asserts that his effort to offer the witnesses was deliberately undermined by the prosecutor, who threatened the witnesses with perjury charges in the event they took the stand. As a direct result of the threats, appellant claims, the witnesses exercised their Fifth Amendment right not to testify. Appellant characterizes this incident as a violation of his due process rights, specifically his right to compulsory process for obtaining witnesses in his favor. See *Commonwealth v. Holloman*, 424 Pa.Super. 73, 621 A.2d 1046, 1053–54 (1993).

Two of appellant's partners in crime, Tracy Parks and Dennis Stokes, were sought by appellant to testify in his defense at trial. At the time of trial, both men had pled guilty to third-degree murder for their part in the victim's death. Parks had given a statement to law enforcement personnel at the time he was arrested and both men had appeared before the court for guilty plea colloquies. Appellant wanted the men to testify about their statements to police and the court since, in appellant's opinion, those statements would be favorable to him at trial.

The court held an extensive in-camera hearing on the issue of the prosecutor's alleged threat and its impact on Parks and Stokes. After a thorough analysis of the claims made by appellant, the allegations against the prosecutor and the position of the two witnesses (both of whom testified before the judge), the court concluded that the witnesses were entitled to invoke their Fifth Amendment rights. The court further found that the invocation of those rights could not be attributed to any alleged or perceived threats by the prosecutor. The court concluded that the testimony of Stokes and Parks would not have been beneficial to appellant, that the reason the two men refused to testify was not based solely on their fear of perjury charges, but on their involvement with other, uncharged criminal conduct not related to the death of the victim, and that appellant had failed to meet his burden in establishing prejudice as a result of the court's ruling. In its opinion, the court explained:

> [A]n examination of the testimony leads us to believe that neither Stokes nor Parks was prepared, or in a position, to testify on the [appellant's] behalf anyway.... In light of the disinclination of both these witnesses to testify for the [appellant] and also their legitimate reasons for invoking the Fifth Amendment, we are convinced that Mr. Minora's [the prosecutor's] comment was not the reason why Parks and Stokes ultimately chose not to testify. Viewing the episode as a whole we cannot say that Parks and Stokes were precluded from making a free and voluntary choice whether or not to testify....

\* \* \*

■ [A] defendant must establish more than the mere absence of testimony.

There must be a plausible showing that an act by the government caused the loss or erosion of testimony that was both material and favorable to the defense. Therefore, in order to prevail on such a due process claim, an accused must, at a minimum, demonstrate some plausible nexus between the challenged government conduct and the absence of certain testimony.... No such nexus has been demonstrated here.

Trial Court Opinion at 7–10 (citation omitted).

The court applied the proper standard in assessing appellant's claim. *See Holloman, supra* (defendant must establish that precluded testimony was material and favorable). Upon review of the applicable case law and the lengthy transcript wherein the court addressed this issue, we find no error in the court's conclusions and so reject appellant's claim.

■ Appellant's next claim concerns the testimony of a prosecution eyewitness, Amy Watkins. During cross-examination by appellant's attorney, Watkins testified that she had identified appellant and other individuals in a photographic array she observed pretrial. Neither appellant nor his counsel was aware of the identification until Watkins revealed it on the stand. Appellant claims that the identification violated his rights for several reasons, including that it was not revealed by the prosecution before trial, that he was not given an opportunity to challenge it and that although he was under arrest at the time, his attorney was not present when the identification was made.

The trial judge held a full in-camera hearing on the Watkins identification issue. With respect to appellant's claim that the prosecution violated Pa.R.Crim.P. 305 B,[1] the court found that the assistant district attorney had no prior knowledge of the identification since the incident occurred when "Watkins, while being interviewed by a police officer, noticed a packet of photos and informally picked the subjects out from the group." Trial Court Opinion at 11. Further, the court found that

appellant's claims did not entitle him to relief since the identification by Watkins was merely cumulative of that by several other witnesses who testified to seeing appellant at the crime scene with the bat in his hands.

In addition to the observations of the trial court set out above, we note that appellant never raised identity as an issue at trial. Indeed, appellant conceded his presence at the scene of the crime and also admitted to wielding the bat. Appellant denied deliberately delivering the fatal blows to the victim's head and instead insisted his acts were justified after the victim pulled a knife. Appellant claimed that he was only attempting to disarm the victim. Watkins' identification of appellant as one of the perpetrators simply was not prejudicial to appellant's defense.

Considering the evidence presented at trial, including appellant's own version of events, there was no error in the court's denial of a new trial based on Watkins' pretrial identification. We agree with the trial court that it worked no prejudice on appellant and does not warrant a reversal under the facts.

■ Appellant's final claim is that his two conspiracy convictions should have merged at sentencing. He makes alternative arguments to support his claim. He first relies on 18 Pa.C.S.A. § 906, which provides that a "person may not be convicted of more than one of the inchoate crimes of criminal attempt, criminal solicitation or criminal conspiracy for conduct designed to commit or culminate in the commission of the same crime." Upon review, we conclude that these facts do not present a § 906 scenario.

■ Section 906 was designed to prevent multiple inchoate charges that carry with them the same criminal intent. As a result, § 906 does not allow a defendant to be sentenced for both conspiracy to commit a specific crime and attempt to commit that same crime. *See Commonwealth v. Brown*, 336 Pa.Super. 628, 486 A.2d 441 (1984) (appellant's sentences for attempted burglary and conspiracy to commit burglary merge under § 906). Here, the crimes for which appellant

1. Rule 305 B requires the Commonwealth to disclose to a criminal defendant the circumstances and results of out-of-court identifications. Pa.R.Crim.P. 305 B(1)(d).

was convicted, and the criminal intent related thereto, were different.

In *Commonwealth v. Graves,* 510 Pa. 423, 508 A.2d 1198 (1986), our supreme court found that the appellant's convictions for conspiracy to assault three police officers and solicitation to murder one of the officers were each directed at a different end and, therefore, were not subject to § 906 limitations. The *Graves* court held that § 906 "provides that inchoate crimes merge only when directed to the commission of the same crime, not merely because they arise out of the same incident." *Id.* Hence, § 906 does not apply in this case.

■ Appellant's other basis for challenging his conspiracy sentences is a compelling one. The conspiracy statute provides that "[i]f a person conspires to commit a number of crimes, he is guilty of only one conspiracy so long as such multiple crimes are the object of the same agreement or continuous conspiratorial relationship." 18 Pa.C.S.A. § 903(c). Appellant insists that he and his cohorts entered into only one agreement, that is, to use force on the victim in an effort to get money from him. That agreement to use force resulted in the death of the victim, which in turn formed the basis of the substantive charge of third degree murder. However, appellant argues, the evidence does not support the conclusion that there were two separate agreements. As a result, appellant cannot be punished twice.

The Commonwealth insists that there were two separate agreements: one made at the time the suspects went in search of the victim with a baseball bat and another made during the beating of the victim. According to the Commonwealth, the group's search for the victim, coupled with its purpose, established the agreement to commit robbery. Once the victim was discovered, a fight broke out. The subsequent conduct of the suspects, i.e., assisting one another as they beat the victim about the head with a baseball bat, established a second agreement with a different purpose, that is, a conspiracy to commit third-degree murder.

■ In determining whether a single or multiple conspiracy has been established, we consider several relevant factors.

The factors most commonly considered in a totality of the circumstances analysis of the single vs. multiple conspiracies issue ... are: the number of overt acts in common; the overlap of personnel; the time period during which the alleged acts took place; the similarity in methods of operation; the locations in which the alleged acts took place; the extent to which the purported conspiracies share a common objective; and, the degree to which interdependence is needed for the overall operation to succeed.

*Commonwealth v. Savage,* 388 Pa.Super. 561, 566 A.2d 272, 278 (1989). Applying these factors to the facts of this case, we conclude that the conduct of appellant and his friends was not two separate conspiracies, but was instead the object of a *"continuous conspiratorial relationship."* 18 Pa.C.S.A. § 903(c) (emphasis added).

The agreement among the participants in this case to use a baseball bat on their victim encompassed both their plan to harm him while taking his money (robbery) and their plan to harm him with such disregard to the value of human life as to constitute malice, which resulted in death (third-degree murder). The same acts were done to accomplish both results, the same actors took part, the acts occurred simultaneously at the same location, the same method was employed and the same objective was pursued. We find that these facts constitute the very circumstances envisioned by § 903(c). The "essential feature of the existing conspiracy was a common plan or scheme to achieve a common, single, comprehensive goal." *Commonwealth v. Troop,* 391 Pa.Super. 613, 571 A.2d 1084, 1090, *appeal denied,* 526 Pa. 634, 584 A.2d 317 (1990).[2]

We conclude therefore that appellant cannot be punished separately for each conspiracy; multiple sentences under these circum-

---

**2.** We observe that the facts of this case are unlike those in *Troop, supra.* There, a panel of this court found that the conspirators planned three separate robberies independently of one another, each of which constituted a separate criminal episode.

stances are explicitly precluded by statute. 18 Pa.C.S.A. § 903(c).

In deference to the trial court's sentencing scheme, we find that a remand is appropriate to allow the trial judge to reassess appellant's punishment in light of our disposition. *Commonwealth v. Dobbs,* 452 Pa.Super. 488, 682 A.2d 388,.392 (1996). We therefore vacate judgment of sentence and remand for resentencing. Jurisdiction relinquished.