J-S67038-16

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| COMMONWEALTH OF PENNSYLVANIA | IN THE SUPERIOR COURT OF PENNSYLVANIA |
|---|---|
| Appellee | |
| v. | |
| RAFAEL L.  PERALTA | |
| Appellant | No. 3020 EDA 2015 |

Appeal from the Judgment of Sentence September 4, 2015
In the Court of Common Pleas of Philadelphia County
Criminal Division at No(s): CP-51-CR-0013157-2014

BEFORE:  FORD ELLIOTT, P.J.E., RANSOM, J., and STEVENS, P.J.E.*

MEMORANDUM BY STEVENS, P.J.E.:        **FILED SEPTEMBER 20, 2016**

This is an appeal from the judgment of sentence entered in the Court of Common Pleas of Philadelphia County following Appellant's conviction at a bench trial on a single count of arson, failure to prevent a catastrophe, risking a catastrophe, criminal mischief, and possessing an instrument of crime, as well as two counts of conspiracy (one to commit arson and one to commit aggravated assault), aggravated assault, simple assault, and reckless endangerment.[1]  On appeal, Appellant presents sufficiency of the evidence claims.  After a careful review, we vacate Appellant's sentence for

_____

[1] 18 Pa.C.S.A. §§ 3301, 3303, 3302, 3304, 907, 903, 2702, 2701, and 2705, respectively.

*Former Justice specially assigned to the Superior Court.

conspiracy to commit aggravated assault but affirm the judgment of sentence in all other respects.

The relevant facts and procedural history are as follows: Appellant was arrested in connection with an incident occurring on October 20, 2014, at 256 East Ontario Street in Philadelphia. On May 21, 2015, and July 2, 2015, the trial court conducted a bifurcated bench trial, at which Appellant was represented counsel.

At trial, Harold Holland testified that, on October 19, 2014, he and his friend, Alvia Jones, cleaned his brother's house, located at 256 East Ontario Street, in preparation for the arrival of new tenants. N.T., 5/21/15, at 13. Since it was late, Mr. Holland and Ms. Jones decided to stay overnight in a second-floor back bedroom. *Id.* at 13-14.

Mr. Holland testified that, suddenly, at approximately 2:20 a.m. on October 20, 2014, he was awakened when a bottle, which contained a flaming rag and a combustible, was thrown through the closed side window. *Id.* at 14-15. Mr. Holland indicated the bottle broke the window's glass, landed about a foot from where he was sleeping, and began a fire in the bedroom. *Id.* at 15-16. As the fire began to spread, the house's fire detectors went off, and Mr. Holland tried to control the flame by covering it with a blanket. *Id.* at 16. Mr. Holland indicated the fire department arrived at the residence within ten minutes of the fire detectors going off, the

- 2 -

firefighters entered by breaking down the front door, and they completely extinguished the flames. *Id.* at 16-17.

Mr. Holland testified that, as a result of the bottle being thrown into the house, in addition to the window and front door being damaged, the carpet in the bedroom and the walls of the bedroom were burnt. *Id.* at 18-19.

On cross-examination, Mr. Holland indicated that he was not burned or physically injured as a result of the incident; however, he was "shaken up." *Id.* at 25. When asked whether he knew Appellant, Mr. Holland agreed that he had never seen him prior to the criminal proceedings. *Id.* at 26.

Ms. Jones confirmed that she and Mr. Holland were in the bedroom at issue when a bottle containing a combustible "cocktail" was thrown through the bedroom window at approximately 2:20 a.m. *Id.* at 31-32. The glass bottle was flaming, and it caught the bedroom rug and wall on fire. *Id.* at 33. Ms. Jones indicated that, when she looked out the window, she saw that the police were already at the house. *Id.* She noted that she was not injured by the fire. *Id.*

On cross-examination, Ms. Jones clarified that, prior to the bottle being thrown into the bedroom, Mr. Holland was asleep but she was awake. *Id.* at 35. She had been watching television in the bedroom and turned it off just minutes before the bottle was thrown through the window. *Id.* She

confirmed that she did not know Appellant and had not seen him prior to trial. *Id.* at 36.

Oliver Nelson testified that he owns the property at issue, and on October 19, 2014, he was at the house with his brother, Mr. Holland, and his friend, Ms. Jones, who were cleaning the house for him. N.T., 7/2/15, at 6-8. He indicated that he gave them permission to stay overnight at the residence. *Id.* at 7.

Mr. Nelson indicated that, during the early morning hours of October 20, 2014, he received a telephone call from the fire department indicating "something had happened" and he needed to get to the house immediately. *Id.* Upon arrival at the residence, Mr. Nelson noticed that, unlike the night before, the bedroom was filled with smoke, a rug was burnt, a bedroom wall was scorched, a window was broken, and the front door had been broken down. *Id.* at 9.

Mr. Nelson testified that, although he had insurance coverage on the house, the proceeds did not cover the full cost of the necessary repairs. *Id.* at 11. He indicated he did not know Appellant and had no reason to know why he would throw a flaming bottle into his house. *Id.*

Police Officer William Branish testified that, on the night in question, he was in uniform but in an unmarked police vehicle. *Id.* at 15-16. He indicated that he had just picked up the unmarked police vehicle and was on his way back to his police district when the following occurred:

As I was sitting [at a red traffic] light, I observed two males in dark clothing toss what looked to be fire balls at a house, about, approximately, maybe three or four of them. So I'm sitting there watching in disbelief. I was just watching this, and I observed through my rear-view mirror a marked police car coming up behind me.

At that time the light changed [to] green. I went through the light. The police car behind me followed me at that time. I got down about mid-block. As I went through the light, both males—I assume they seen [sic] [the] police car behind me followed me; not necessarily me, but the police car behind me.

They start[ed] running down "B" Street towards the 26th District. I guess that would be south, the way I was traveling. I sped up, and jump[ed] out of my car. When I jumped out of the car, I ran towards the males. And one stopped, who is [Appellant], and the other one continued to run.

I told [Appellant]—there was approximately, maybe 12 feet between us. I told him to stop. I took out my Tazer [sic] and told him to stop and not to run anymore.

At that time the other officer exited and came up behind me. Within that time, [Appellant] ran northbound on "B" Street. He ran back up. I told the other officer, I'm going to start chasing him. He said, Yes. So I ran back to my unmarked car.

At that time I observed [Appellant] running up "B" Street and make a left on Ontario Street where I had initially seen him at the corner. I got in the car, and on that same block, there is the next light. I hit that light. It was red.

At that time I observed a gray Audi traveling at a high rate of speed. It went through the light—well, it was already a green light. It went through. And out of curiosity, I said, I'm going to follow the car.

So I made a right there. At the following street—I'm not sure of the street, what it was—that car made a right. I followed the car. The car made a right. I made a right. It stopped mid-block, and that's when I seen [sic] [Appellant]. The passenger door opened. He jumped in the car, and then he proceeded to drive away.

*Id.* at 16-17.

Officer Branish testified that he followed the car and radioed information as to his location. *Id.* at 18. Within five or six blocks, the car stopped as marked police cruisers approached up the street. *Id.* Officer Branish approached the vehicle and discovered a female driver with Appellant sitting in the passenger side. *Id.* Officer Branish arrested Appellant, who was cooperative but sweating profusely. *Id.* at 18-19.

Officer Branish clarified that, when he was originally stopped at the red light, he observed two individuals; both of whom were throwing flaming bottles. *Id.* at 43. He specifically testified he saw Appellant throwing a bottle. *Id.*

Police Officer Adam Viola testified that he was on duty, in uniform, and driving a marked police car at the time in question. *Id.* at 46. He testified that he observed the following:

> Your Honor, around approximately 2:20 a.m., I was driving southbound on "B" Street. I observed two black males throwing objects that were on fire at the residence, 256 East Ontario.
> As I approached the location, the gentlemen, they looked at me, saw the police car, obviously, and stood there for approximately 30 seconds, and then fled on foot running southbound on "B" Street.
> He was accompanied by another male, an unidentified male.

*Id.* at 46-47.

Officer Viola reiterated that:

I observed [Appellant] and the other male throwing two or three items that were on fire. As I approached them, they kind of got shocked. So they stood there for about 30 seconds. Like I said,

- 6 -

as I got closer to them, [Appellant] was about five or six feet from me. At that point he took off running southbound on "B."

*Id.* at 48.

Officer Viola indicated that he then saw Appellant run westbound on Ontario Street. *Id.* at 49. Officer Viola, who was chasing Appellant in his car, lost sight of Appellant; however, after "maybe a minute, Officer Branish had made a car stop on 3500 2nd Street." *Id.* Officer Viola observed that Appellant was in the stopped car, and he told Officer Branish "that was indeed the male that I did see throwing the objects that were on fire at the house." *Id.* at 49-50.

When asked specifically how many flaming objects he had observed Appellant throw at the house, Officer Viola responded "[a]pproximately two to three." *Id.* at 50. Additionally, Officer Viola indicated that, when Appellant was stopped by Officer Branish, he was sweating profusely and "[h]is chest was pumping pretty quick." *Id.* Officer Viola admitted that the second male who had been seen throwing flaming objects at the house was never apprehended. *Id.*

On cross-examination, Officer Viola noted that the two men, who he observed throwing flaming items at the house, were standing in a vacant lot, which was located next to the house. *Id.* at 57.

Police Officer Christopher Thompson testified that he was on duty, and, after receiving radio information, he responded to the subject house. He indicated the following:

When I arrived at the location, there was a fire spread to the outside of the ground level. The grass was on fire. Also, I seen [*sic*] a female complainant from the second-story window yelling for help. There was smoke coming out of the window. And I could also see an orange, amber lighting as if there was fire in that room.

*Id.* at 59. Officer Thompson testified that he did not observe any civilians or police outside of the house when he arrived. *Id.*

Lieutenant Burton,[2] a fire marshal, testified that he observed the bedroom and everything was consistent with a firebomb being thrown in through the window. *Id.* at 68. He opined that one firebomb was thrown into the residence while others were found outside of the property. *Id.*

Lieutenant George Werez, an assistant fire marshal who is an expert in the use of dog detection for accelerants, testified that he transported the trained fire dog to the scene and, on the second floor rear bedroom, the dog alerted to the presence of an accelerant. *Id.* at 70-80.

At the conclusion of all testimony, the parties stipulated that the samples gathered from the crime scene, including floor samples from the bedroom, testified positive for gasoline. *Id.* at 83.

The trial court convicted Appellant of the offenses indicated *supra*, and on September 4, 2015, the trial court sentenced Appellant to concurrent sentences of six years to twelve years in prison for arson, conspiracy to

---

[2] The record does not contain the lieutenant's given name.

commit arson, and both aggravated assault convictions; a concurrent five years to ten years in prison for conspiracy to commit aggravated assault; a concurrent three years to seven years in prison for risking a catastrophe; and no further penalty was imposed for the remaining convictions. Thus, Appellant was sentenced to an aggregate of six years to twelve years in prison. This timely appeal followed, and all Pa.R.A.P. 1925 requirements have been met.

Appellant presents sufficiency of the evidence claims. Our standard for reviewing challenges to the sufficiency of the evidence is well settled.

> The standard we apply in reviewing the sufficiency of the evidence is whether viewing all the evidence admitted at trial in the light most favorable to the verdict winner, there is sufficient evidence to enable the fact-finder to find every element of the crime beyond a reasonable doubt. In applying the above test, we may not weigh the evidence and substitute our judgment for the fact-finder. In addition, we note that the facts and circumstances established by the Commonwealth need not preclude every possibility of innocence. Any doubts regarding a defendant's guilt may be resolved by the fact-finder unless the evidence is so weak and inconclusive that as a matter of law no probability of fact may be drawn from the combined circumstances. The Commonwealth may sustain its burden of proving every element of the crime beyond a reasonable doubt by means of wholly circumstantial evidence. Moreover, in applying the above test, the entire record must be evaluated and all evidence actually received must be considered. Finally, the trier of fact while passing upon the credibility of witnesses and the weight of the evidence produced, is free to believe all, part or none of the evidence.

*Commonwealth v. Caban*, 60 A.3d 120, 132–33 (Pa.Super. 2012) (quotation omitted).

Appellant's first claim is the evidence was insufficient to sustain his conviction for conspiracy to commit aggravated assault since there is no evidence that he "entered into an agreement with another person the object of which was to cause or intend to cause serious bodily injury to another[.]"[3] Appellant's Brief at 15. Appellant also claims the evidence was insufficient to sustain his convictions for aggravated assault as to Mr. Holland and Ms. Jones, since there is no evidence Appellant acted with the specific intent to cause serious bodily injury to the victims. In this regard, Appellant claims there is no evidence that either he or his cohort knew or had reason to know the house was occupied.

18 Pa.C.S.A. § 903 provides the following:

**(a) Definition of conspiracy.**—A person is guilty of conspiracy with another person or persons to commit a crime if with the intent of promoting or facilitating its commission he:
    (1) agrees with such other person or persons that they or one or more of them will engage in conduct which constitutes such crime or an attempt or solicitation to commit such crime; or
    (2) agrees to aid such other person or persons in the planning or commission of such crime or of an attempt or solicitation to commit such crime.

18 Pa.C.S.A. § 903.

Our Supreme Court has indicated that:

To sustain a criminal conspiracy conviction, the Commonwealth must establish a defendant entered into an agreement to commit or aid in an unlawful act with another person or persons, with a shared criminal intent, and an overt act was done in the

---

[3] We have renumbered Appellant's issues for the ease of discussion.

conspiracy's furtherance. 18 Pa.C.S.[A.] § 903. The overt act need not accomplish the crime-it need only be in furtherance thereof. In fact, no crime at all need be accomplished for the conspiracy to be committed.

*Commonwealth v. Weimer*, 602 Pa. 33, 38–39, 977 A.2d 1103, 1105–06 (2009) (footnote and citation omitted).

In most cases of conspiracy, it is difficult to prove an explicit or formal agreement; hence, the agreement is generally established via circumstantial evidence, such as by "'the relations, conduct, or circumstances of the parties or overt acts on the part of co-conspirators.'" *Commonwealth v. Sanchez*, 623 Pa. 253, 303, 82 A.3d 943, 973 (2013) (quotation omitted). Once a conspiracy is established, the actions of each co-conspirator may be imputed to the other conspirators. In this regard, "[t]he law in Pennsylvania is settled that each conspirator is criminally responsible for the actions of his co-conspirator, provided that the actions are accomplished in furtherance of the common design." *Commonwealth v. Baskerville*, 681 A.2d 195, 201 (Pa.Super. 1996).

Moreover, as this Court has noted "[c]onspiracy to commit a crime and the underlying crime itself are two entirely separate offenses with separate elements required for each." *Commonwealth v. Thomas*, 65 A.3d 939, 943 (Pa.Super. 2013) (quotation marks and quotation omitted).

With regard to aggravated assault, Appellant was convicted of two counts under 18 Pa.C.S.A. § 2702(a)(1), which provides the following:

**(a) Offense defined.--**A person is guilty of aggravated assault if he:
(1) attempts to cause serious bodily injury to another, or causes such injury intentionally, knowingly or recklessly under circumstances manifesting extreme indifference to the value of human life[.]

18 Pa.C.S.A. § 2702(a)(1).

Serious bodily injury is defined as "bodily injury which creates a substantial risk of death or which causes serious, permanent disfigurement, or protracted loss or impairment of the function of any bodily member or organ." 18 Pa.C.S.A. § 2301. Where, as in the case *sub judice*, the victims do not suffer serious bodily injury:

the charge of aggravated assault can be supported only if the evidence supports a finding of an attempt to cause such injury. A person commits an attempt when, with intent to commit a specific crime, he does any act which constitutes a substantial step toward the commission of that crime. An attempt under Subsection 2702(a)(1) requires some act, albeit not one causing serious bodily injury, accompanied by an intent to inflict serious bodily injury.

*Commonwealth v. Martuscelli*, 54 A.3d 940, 948 (Pa.Super. 2012) (quotations and quotation marks omitted).

The Crimes Code defines the *mens rea* of "intent" as follows:

A person acts intentionally with respect to a material element of an offense when:
(i) if the element involves the nature of his conduct or a result thereof, it is his conscious object to engage in conduct of that nature or to cause such a result; and
(ii) if the element involves the attendant circumstances, he is aware of the existence of such circumstances or he believes or hopes that they exist.

18 Pa.C.S.A. § 302(b)(1).

- 12 -

In the case *sub judice*, in rejecting Appellant's specific sufficiency of the evidence claims as to conspiracy to commit aggravated assault, the trial court cogently indicated the following:

> Instantly, the Commonwealth presented sufficient evidence to establish that Appellant committed the crime of Conspiracy to Commit Aggravated Assault insofar as it showed that he, together with another person, lobbed firebombs into a residential structure occupied by two individuals. Upon seeing a police car, both men simultaneously fled. Their concerted actions during and after the incident are sufficient to find Appellant guilty of conspiracy to commit Aggravated Assault as it establishes that they were acting in conformity with a preconceived plan, the object of which was to firebomb the residence. Those actions establish intent and state of mind because the only room into which a firebomb was thrown was in the bedroom occupied by the two victims, one of whom was watching television at the time, the light of which illuminated the room. This fact alone strongly suggests that the two perpetrators were aware the room they targeted was occupied and that they together conspired to harm whoever might be inside.

Trial Court Pa.R.A.P. 1925(a) Opinion, filed 3/10/16, at 9-10.

We agree with the trial court in this regard. Specifically, we conclude that, viewing the evidence in the light most favorable to the Commonwealth, as verdict winner, the evidence supports Appellant's conviction for conspiracy to commit aggravated assault. **Thomas**, 65 A.3d at 945 ("In order to sustain a conviction of criminal conspiracy to commit aggravated assault, the Commonwealth need only establish intent to commit or aid in the commission of aggravated assault, an agreement with a co-conspirator, and an overt act in furtherance of the conspiracy.") (citation omitted)).

Additionally, in rejecting Appellant's claim the evidence does not sufficiently support the trial court's determination that Appellant and his co-conspirator completed the commission of two counts of aggravated assault, the trial court cogently indicated the following:

> Th[e] evidence was also sufficient to support the two Aggravated Assault convictions because the act of throwing a firebomb into the only occupied room in the residence establishes that the act was committed with the requisite intent. In **Commonwealth v. Rosado**, 684 A.2d 605, 607 (Pa.Super. 1996), Rosado, who was convicted of two counts of aggravated assault, argued on appeal that the evidence was insufficient to sustain his conviction because the victims did not suffer serious bodily injury and the prosecution did not prove that he acted with the intent to cause such injury. Rosado fired multiple shots through the second-floor bedroom windows of a residence. At the time, a husband and wife were asleep with the lights on in the bedroom into which the shots were fired and they awoke to the sound of shattering glass and plaster falling on them from the ceiling above. Although they were uninjured, there were bullet holes on both sides of the bedroom windows and on the walls and ceiling of the bedroom. **Id.** at 606-07. The Superior Court held that the above-referenced evidence was sufficient to support the fact-finder's conclusion that Rosado's act of repeatedly discharging his semi-automatic weapon into the lighted second-story windows of the victims' bedroom, which had a light on, instead of other windows of the property demonstrated that Rosado had a specific intent to inflict serious bodily injury upon the occupants of the room. **Id.** at 609-10.
>
> As in **Rosado**, [in this case] Appellant and his [cohort] threw a firebomb into the only occupied room of the property thereby manifesting the requisite intent to cause harm to whomever might be inside it. Based on this evidence, this Court properly concluded that the act of throwing a firebomb into [the] residence establishes the specific intent to inflict serious bodily injury.

Trial Court Pa.R.A.P. 1925(a) Opinion, filed 3/10/16, at 10.

We agree with the trial court's reasoning in this regard, and viewing the evidence in the light most favorable to the Commonwealth, conclude the evidence was sufficient to sustain Appellant's convictions for aggravated assault.[4]

This does not end our inquiry, however, as Appellant next claims the evidence was insufficient to convict him on two counts of conspiracy (one to commit arson and one to commit aggravated assault). Specifically, he alleges there was but one conspiracy in this case, and the evidence does not support a finding of two separate conspiracies. Thus, he contends that, under 18 Pa.C.S.A. § 903(c), he could be sentenced on only one criminal conspiracy.[5]

Section 903(c) provides:

---

[4] We note the Commonwealth's theory for the aggravated assault convictions was based, at least in part, on conspiratorial liability. However, inasmuch as Officers Branish and Viola both testified that they personally observed Appellant throwing firebombs at the bedroom window of the occupied house, we conclude that, even absent a conspiratorial agreement or evidence that Appellant's firebomb was the one which successfully entered the bedroom window, the evidence sufficiently supports Appellant's convictions for aggravated assault. Simply put, Appellant's throwing of firebombs at the window of an occupied bedroom during the early morning hours is sufficient to establish an attempt to cause serious bodily injury to the occupants. *See* 18 Pa.C.S.A. § 2702(a)(1).

[5] Our Supreme Court has held that an appellant's challenge to the imposition of separate sentences for multiple counts of conspiracy is properly presented as a challenge to the sufficiency of the evidence. *See Commonwealth v. Andrews*, 564 Pa. 321, 768 A.2d 309 (2001).

> **(c) Conspiracy with multiple criminal objectives.--**If a person conspires to commit a number of crimes, he is guilty of only one conspiracy so long as such multiple crimes are the object of the same agreement or continuous conspiratorial relationship.

18 Pa.C.S.A. § 903(c).

> In determining whether a single conspiracy or multiple conspiracies have been established, we must consider several relevant factors:
>> The factors most commonly considered in a totality of the circumstances analysis of the single vs. multiple conspiracies issue. . . are: the number of overt acts in common; the overlap of personnel; the time period during which the alleged acts took place; the similarity in methods of operation; the locations in which the alleged acts took place; the extent to which the purported conspiracies share a common objective; and, the degree to which interdependence is needed for the overall operation to succeed.

*Commonwealth v. Barnes*, 871 A.2d 812, 819 (Pa.Super. 2005) (quotation and citation omitted). *See Commonwealth v. Koehler*, 558 Pa. 334, 737 A.2d 225 (1999). "Nonetheless, the essence of conspiracy remains the agreement [between the parties] to work in concert for one or more criminal purposes." *Koehler*, 558 Pa. at 371, 737 A.2d at 245 (quotation and quotation marks omitted).

Applying the above to the facts of this case, we agree with Appellant that the evidence was sufficient to establish a single criminal conspiracy only. As the trial court indicated in its Rule 1925(a) opinion:

> Appellant was convicted of two counts of conspiracy: one for the assaults on [Mr.] Holland and [Ms.] Jones resulting from throwing a firebomb through the window of the room they occupied and a separate conspiracy for arson arising out of

throwing firebombs into the residence. Clearly, the acts committed in furtherance of those conspiracies were exactly the same as they shared the same location [and] time[.] Therefore, it is suggested that Appellant's claim be found meritorious and that the judgment of sentence imposed on one of the conspiracy charges be arrested.

Trial Court Pa.R.A.P. 1925(a) Opinion, filed 3/10/16, at 7 (citations and footnote omitted).

Applying the relevant factors to the facts of this case, we conclude that the conduct of Appellant and his cohort was not two separate conspiracies, but was instead the the object of the same agreement or continuous conspiratorial relationship. 18 Pa.C.S.A. § 903(c). The agreement among the participants in this case to throw flaming gasoline-containing bottles at the house located at 256 East Ontario Street encompassed both their plan to commit arson and their plan to commit aggravated assault. The same overt acts and methods were done to accomplish both results (throwing of the flaming gasoline-containing bottles into and at the residence); the same actors took part (Appellant and the unidentified male), the acts occurred simultaneously at the same location, and the same objective was pursued. We find that these facts constitute the very circumstances envisioned by Section 903(c).

Although Appellant and his co-conspirator conspired to commit both arson and aggravated assault by throwing the flaming objects in the bedroom window of the residence, these multiple crimes were the object of the same agreement or continuous conspiratorial relationship. 18 Pa.C.S.A.

§ 903(c); *Commonwealth v. Savage*, 566 A.2d 272, 276 (Pa.Super. 1989) ("Thus, when on a single occasion there is a single agreement to commit two crimes, *e.g.* murder and arson, a single conspiracy exists.") (citation omitted)); *Commonwealth v. Woods*, 710 A.2d 626, 632 n.2 (Pa.Super. 1998) ("Whether or not there is a single conspiracy or multiple conspiracies is not dependent upon the number of crimes committed.") (citation omitted)). We conclude, therefore, that Appellant cannot be punished separately for each conspiracy; multiple sentences under these circumstances are explicitly precluded by statute. 18 Pa.C.S.A. § 903(c); *Commonwealth v. Davis*, 704 A.2d 650, 654-55 (Pa.Super. 1997).

Having so concluded, this Court may affirm, modify, vacate, set aside or reverse any order brought before it and may remand the matter. 42 Pa.C.S.A. § 706. "If our disposition upsets the overall sentencing scheme of the trial court, we must remand so that the court can restructure its sentence plan." *Commonwealth v. Thur*, 906 A.2d 552, 569 (Pa.Super. 2006) (citation omitted). "By contrast, if our decision does not alter the overall scheme, there is no need for a remand." *Id.* Here, we conclude that we may modify the trial court's sentence and it is unnecessary to remand for the trial court to do so.

In our decision to modify the sentence imposed, we note that Appellant's conviction for conspiracy to commit arson was graded as a first-degree felony (F1), and the trial court imposed a sentence of six years to

twelve years in prison. Appellant's conviction for conspiracy to commit aggravated assault was graded as a felony of the second-degree (F2), and the trial court imposed a sentence of five years to ten years in prison. Since the conspiracy to commit arson conviction was graded as a more serious offense, we vacate the sentence imposed on the charge of conspiracy to commit aggravated assault. **See** 18 Pa.C.S.A. § 905(a) (wherein the legislature has indicated that a conspiracy with multiple objects is to be graded the same and degree as the most serious offense which is the object).

In so doing, we note that we have not upset the trial court's sentencing scheme. **Thur**, **supra**. The trial court imposed concurrent sentences for Appellant's two conspiracy convictions, thus it is unnecessary for us to remand this matter for resentencing.[6]

For all of the foregoing reason, we affirm Appellant's convictions but vacate his separate sentence for conspiracy to commit aggravated assault. His judgment of sentence is affirmed in all other respects.

Judgment of Sentence for Conspiracy to Commit Aggravated Assault Vacated; Judgment of Sentence Affirmed in all other Respects.

_____

[6] We note that, in its Rule 1925(a) opinion, the trial court acknowledges its concurrent sentencing scheme and suggests that, assuming we agree Appellant should have been sentenced on a single charge of conspiracy, "no remand for resentencing is required[.]" Trial Court Pa.R.A.P. 1925(a) Opinion, filed 3/10/16, at 7 n.3.

Judgment Entered.

_____

Joseph D. Seletyn, Esq.
Prothonotary


Date: 9/20/2016