J-S65039-18

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| | : | |
| v. | : | |
| | : | |
| GREGORY C. SHAMBERGER | : | |
| | : | |
| Appellant | : | No. 1604 MDA 2017 |

Appeal from the Judgment of Sentence Entered May 15, 2017
In the Court of Common Pleas of Berks County Criminal Division at
No(s):  CP-06-CR-0004642-2016

BEFORE:  SHOGAN, J., STABILE, J., and McLAUGHLIN, J.

MEMORANDUM BY McLAUGHLIN, J.:          **FILED: JANUARY 29, 2019**

Gregory C. Shamberger appeals the judgment of sentence entered on May 15, 2017. Shamberger challenges the sufficiency of the evidence, the discretionary aspects of his sentence, and the introduction of testimony from a witness. We affirm in part and vacate in part.

The trial court aptly summarized the facts and procedural history of this case as follows:

> At 2:41 p.m. on August 22, 2016, [] Shamberger, and Kendra Scott entered the lobby of Fox Berkshire movie theater, a multiplex movie theater located in Wyomissing, Berks County, Pennsylvania. Fox Berkshire has eight screens. Screening rooms 1 and 2 are located to the left of the box office, and rooms 3 through 8 are located to the right. On that date, the nationally-released movie Sausage Party was playing at Fox Berkshire at 2:45 p.m. in one of the screening rooms numbered 3 through 8.
>
> Later that day, Rosemary Grill and her mother arrived at Fox Berkshire and attended the 4:00 p.m. screening of Ben-Hur in screening room 2. Ms. Grill brought a purse with her to Fox

Berkshire. Ms. Grill's wallet was inside the purse when she entered screening room 2. Among other things, the wallet contained two credit cards and one debit card issued to Ms. Grill. Ms. Grill and her mother were the only two people in screening room 2 at the start of the movie, and they sat in the first two seats of the second row from the back, with Ms. Grill's mother on the aisle. Ms. Grill placed her purse on the floor next to her chair (toward the center of the row), reclined her chair, and settled in for the movie.

At 4:08 p.m. (four minutes after the start of Ben-Hur), [Shamberger] and Kendra Scott walked through the lobby of Fox Berkshire moving from the direction of screens 3-8 toward screening rooms 1 and 2. Around 4:15 p.m., a woman walked into the showing of Ben-Hur and sat two or three seats away from Ms. Grill in the same row. The woman left the room about 20 minutes later and did not return.

A short time later, [Shamberger] drove a white Chevy Impala, with Scott in the passenger seat, to a gas pump at the "Friendly Foo Mart" Exxon gas station in Wyomissing. He got out of the vehicle at Exxon. Scott did not exit the vehicle at Exxon. Ms. Grill's Bank of America (American Express) credit card was used at Exxon to make a purchase in the amount of $34.00. [Shamberger] got back into the vehicle and he and Scott left Exxon.

At 5:23 p.m., Scott entered Best Buy in Wyomissing. Five minutes later, at 5:28 p.m., [Shamberger] entered the same Best Buy. At 5:32 p.m. Ms. Grill's BB&T Bank (Visa) debit card was used at Best Buy register 051 to purchase a MacBook Pro in the amount of $2,151.78. Less than three minutes later, at 5:34 p.m., Ms. Grill's Citibank (MasterCard) credit card was used at the same register to purchase an iMac desktop computer in the amount of $2,316.09. [Shamberger] exited the Best Buy after the iMac desktop computer was purchased, and he did not return. [Shamberger] carried two items as he exited Best Buy. At 5:47 p.m., Scott used Ms. Grill's Bank of America (American Express) credit card at Best Buy register 060 to purchase a Samsung television in the amount of $1,483.99. Scott exited Best Buy with the television at 5:48 p.m.

At 6:21 p.m., Scott used Ms. Grill's BB&T Bank (Visa) debit card at Target register 114 to purchase an iPad and protective case in the amount of $826.78. A minute later, at 6:22 p.m., Scott

used Ms. Grill's Citibank (MasterCard) credit card at the same register to purchase an iPad in the amount of $794.99.

Two days later, on August 24, 2016, [Shamberger] and Scott were back at Fox Berkshire movie theater. At 7:09 p.m., Scott purchased tickets to see the movie Sausage Party, which was again playing in one of the screening rooms 3-8. On that date, Ben-Hur was again playing in screening room 2. A Fox Berkshire employee recognized [Shamberger] and Scott and contacted Wyomissing police after Scott purchased the tickets. Wyomissing police arrived, reviewed surveillance video, and told the employee to pull [Shamberger] and Scott out of Sausage Party. As the employee and police exited the box office into the lobby at 7:31 p.m., they saw [Shamberger] and Scot entering the lobby through the door for screening rooms 1 and 2. Officer Moyer of Wyomissing Police and another officer approached [Shamberger] and Scott and asked to talk.

[Shamberger] and Scott were separated and Officer Moyer questioned [Shamberger]. [Shamberger] told Officer Moyer that his name was Gregory Clemmens, and had an address on Jackson Street in Philadelphia. Officer Moyer could not verify the information provided by [Shamberger] and, at that time, Officer Moyer placed [Shamberger] in handcuffs and informed him that he was under official investigation. After informing [Shamberger] that he was under investigation for theft, Officer Moyer asked [Shamberger] for his name three or four times, and each time [Shamberger] stated Gregory Clemmens. Wyomissing Police proceeded to investigate the parking lot of Fox Berkshire and observed the same white, Chevy impala seen on surveillance at Exxon from August 22, 2016. A search of the vehicle revealed official paperwork from the City of Philadelphia addressed to [] Shamberger inside the glove compartment.

Following a two-day jury trial (April 19-20, 2017), [Shamberger] was convicted by a jury of three counts of access device fraud, three counts of conspiracy to commit access device fraud, and one count of false identification to law enforcement authorities. On May 15, 2017, the court sentenced [Shamberger] to, *inter alia*, an aggregate term of 42 to 120 months' imprisonment (with 265 days' credit for time served). [Shamberger] filed a timely post-sentence motion on May 24, 201[7] requesting judgment of acquittal, arrest of judgment, a new trial, and modification of his sentence. The post-sentence

- 3 -

motion was denied by operation of law on October 16, 2017, and this direct appeal followed.

Trial Court Opinion ("TCO"), filed June 25, 2018, at 1-4 (citations to record and footnotes omitted).

On appeal, Shamberger asks us to review the following issues:

1. Whether the evidence presented at trial is sufficient to sustain the guilty verdict(s) for Access Device Fraud where the Commonwealth failed to establish, beyond a reasonable doubt, that [Shamberger] had utilized the stolen credit cards thereby committing the crime of Access Device Fraud.

2. Whether the evidence presented at trial is sufficient to sustain the guilty verdict(s) for Access Device Fraud based on accomplice liability where the Commonwealth failed to establish, beyond a reasonable doubt, that [Shamberger] acted with the intent to promote or facilitate the crime of Access Device Fraud, that he agreed to aid in the commission of the crime of Access Device Fraud, or that he did aid in the commission of the crime of Access Device Fraud.

3. Whether the evidence presented at trial is sufficient to sustain the guilty verdict(s) for Conspiracy to Commit Access Device Fraud where the Commonwealth failed to establish, beyond a reasonable doubt, that [Shamberger] entered into an agreement with Kendra Scott to commit the crime of Access Device Fraud.

4. Whether the evidence presented at trial is sufficient to sustain the guilty verdict for False Identification to Law Enforcement Authorities where the Commonwealth failed to establish, beyond a reasonable doubt, that [Shamberger] was advised that he was under investigation prior to providing information to police.

5. Whether the trial court erred and abused its discretion by allowing Sergeant Grim to testify about his recollection of the contents of a Best Buy surveillance video, where that footage was never provided to defense counsel and was not played for the jury.

- 4 -

6. Whether the trial court erred by imposing three separate sentences for conspiracy where all the evidence related to a single alleged conspiracy.

7. Whether the trial court abused its discretion by sentencing [Shamberger] in the aggravated range for each of the first six counts of the Information, without considering the requisite sentencing factors and without noting aggravating factors on the record.

Shamberger's Br. at 2-3.

## SUFFICIENCY OF EVIDENCE

When reviewing a challenge to the sufficiency of the evidence, we ask "whether[,] viewing all the evidence admitted at trial in the light most favorable to the verdict winner, there is sufficient evidence to enable the fact-finder to find every element of the crime beyond a reasonable doubt." **Commonwealth v. Brown**, 23 A.3d 544, 559 (Pa.Super. 2011) (e*n banc*) (citation omitted). Our standard of review is *de novo* and our scope of review is plenary. **See Commonwealth v. Neysmith**, 192 A.3d 184, 189 (Pa.Super. 2018).

*ACCESS DEVICE FRAUD*

Shamberger maintains that there was insufficient evidence to sustain his access device fraud conviction because (1) it only showed that he was present or nearby when his co-conspirator was using the victim's credit cards and (2) there was no evidence of his intent to commit the crimes committed by his co-conspirator. **See** Shamberger's Br. at 15, 17.

- 5 -

The Commonwealth sufficiently proves the crime of access device fraud when it establishes that the defendant: "Use[d] an access device to obtain or in an attempt to obtain property or services with knowledge that . . . the access device was issued to another person who has not authorized its use." 18 Pa.C.S.A. 4106(a)(1)(ii). An access device is defined as:

> Any card, including but not limited to, a credit card, debit card and automated teller machine card, plate, code, account number, personal identification number or other means of account access that can be used alone or in conjunction with another access device to obtain money, goods, services or anything else of value or that can be used to transfer funds.

18 Pa.C.S.A. 4106(d).

Viewing the facts in the light most favorable to the Commonwealth as verdict winner, the evidence established that a short time after the victim saw a woman leave the theater room where she was watching a film:

> [Shamberger] drove a white Chevy Impala, with Scott in the passenger seat, to a gas pump at the "Friendly Food Mart" Exxon gas station in Wyomissing. He got out of the vehicle at Exxon. Scott did not exit the vehicle.
>
> [Shamberger] used [the victim's] Bank of America (American Express) card to obtain only $34.00 worth of gas at Exxon and that Scott used the same card to obtain $1,483.99 worth of merchandise at Best Buy.
>
> ***
>
> The Commonwealth produced direct video and documentary evidence that [Shamberger] used the [victim's] BB&T Bank (Visa) debit card to obtain $2,151.78 in merchandise at Best Buy, and the [victim's] Citibank (Mastercard) credit card to obtain $2,316.09 in merchandise at Best Buy.

- 6 -

***

> Evidence produced at trial further demonstrated that in each case of access device fraud, [Shamberger] used the card first, and thereafter, Scott used the card at a different location.

TCO at 2, 7-8. This evidence was sufficient to sustain the conviction for access device fraud because it showed that Shamberger used the victim's debit and credit cards to purchase merchandise and he was not authorized to do so.

*ACCOMPLICE LIABILITY*

Next, Shamberger maintains that "there was no evidence that [he] had the specific intent to promote or facilitate the commission of any of the crimes committed by Kendrea Scott, much less evidence relating [to] each and every one." Shamberger's Br. at 17.

To satisfy its burden to prove the defendant guilty of being an accomplice to the crime, the Commonwealth must show that: (1) "the defendant intended to aid or promote the underlying offense" and (2) "the defendant actively participated in the crime by soliciting, aiding, or agreeing to aid the principal." ***Commonwealth v. Murphy***, 844 A.2d 1228, 1234 (Pa. 2004).

Here, Shamberger aided Scott in using the victim's credit and debit cards to purchase merchandise and gas for his vehicle. Following his purchase of gas at the Exxon, he and Scott purchased items at the Best Buy including a Samsung television and iMac desktop computer. The reasonable inference

is that Shamberger used his vehicle to get to Best Buy and then stored those purchases in that same vehicle, thereby actively participating and aiding in the crime. This claim is meritless and no relief is due.

*CONSPIRACY*

Shamberger maintains that because there was no evidence "regarding any agreement between [Shamberger] and his alleged co-conspirator," the evidence was insufficient to sustain the conspiracy conviction. Shamberger's Br. at 19

To prove a criminal conspiracy, the Commonwealth must establish that the defendant: "(1) entered an agreement to commit or aid in an unlawful act with another person or persons, (2) with a shared criminal intent and, (3) an overt act was done in furtherance of the conspiracy." ***Commonwealth v. Chambers***, 188 A.3d 400, 410 (Pa. 2018) (citation omitted). "Once the conspiracy is established beyond a reasonable doubt, a conspirator can be convicted of both the conspiracy and the substantive offense that served as the illicit objective of the conspiracy." ***Id.*** The existence of an agreement is "rarely proven with direct evidence." ***Id.*** An agreement may be inferred from many circumstances including but not limited to:

> [T]he relation between the parties, knowledge of and participation in the crime, and the circumstances and conduct of the parties surrounding the criminal episode. These factors may coalesce to establish a conspiratorial agreement beyond a reasonable doubt where one fact alone might fail.

*Commonwealth v. Bricker*, 882 A.2d 1008, 1017 (Pa.Super. 2005) (quoting Commonwealth v. Jones, 874 A.2d 108, 121-22 (Pa.Super. 2005)).

Here, the evidence established that there was some form of relationship between Shamberger and Scott as they were seen entering the theater together on two separate occasions. Additionally, while there was no direct testimony that Shamberger agreed to conspire with Scott, his actions are a clear indication of his agreement to further the conspiracy. The facts in the light most favorable to the Commonwealth as verdict winner established that after Scott stole the victim's wallet, she and Shamberger proceeded to the Exxon gas station where Shamberger used one of the victim's cards that was in her wallet. Additionally, when police approached Shamberger, he lied about his name, his address, and about his mode of transportation to the theater that day. All of these facts were sufficient to sustain his conviction for conspiracy.

*FALSE IDENTIFICATION TO LAW ENFORCEMENT*

Shamberger maintains there is insufficient evidence to sustain the conviction because Officer Moyer did not advise him that he was under investigation prior to asking for his name and address. He maintains that *Commonwealth v. Kitchen*, 181 A.3d 337, 345 (Pa.Super. 2018) (*en banc*), requires us to vacate this conviction. We disagree. The Court in *Kitchen* held:

> In order to sustain a conviction for False ID, the Commonwealth must prove that the individual was **told** by police that he or she was under investigation, and that must occur prior to the individual's presentment of false identity information.

***Kitchen***, 181 A.3d at 345 (emphasis in original).

Officer Moyer did not initially inform Shamberger that he was the subject of an investigation. However, when Officer Moyer informed Shamberger that he was under investigation, Shamberger continued to provide the same false name "three or four times." TCO at 11. Thus, Shamberger "furnished law enforcement authorities with false information after being informed by the law enforcement officer that he was the subject of an official investigation of a violation of law." ***See In re D.S.***, 39 A.3d 968, 947 (Pa. 2012); ***contra. Commonwealth v. Barnes***, 14 A.3d 128, 131-32 (Pa.Super. 2011) (stating it is not illegal to give false identification to law enforcement where officer claimed the subject of the investigation was false identification to an officer after defendant gave same false name multiple times to officer).

**ADMISSION OF EVIDENCE**

Next, Shamberger argues that "the Commonwealth should not have been permitted to present evidence relating to video surveillance footage allegedly from Best Buy" showing [Shamberger] "entering and then leaving the store with items in his hands." Shamberger's Br. at 23. He maintains that "[t]he officer's attempt to testify about the contents of a video not produced at trial was barred by the best evidence rule because 'whatever knowledge he possessed was gained form [sic] his viewing of the videotape. Thus, the original video tape should have been produced.'" ***Id.*** at 24 (citing ***Commonwealth v. Lewis***, 623 A.2d 355, 358 (Pa.Super. 1993)).

We review a trial court's ruling on the admissibility of evidence for an abuse of discretion. *See Commonwealth v. Belknap*, 105 A.3d 7, 9-10 (Pa.Super. 2014). We give deference to the trial court's decisions regarding the admissibility of evidence. *Id.* An abuse of discretion is a ruling where there is an "overriding or misapplication of the law, or the exercise of judgment that is manifestly unreasonable, or the result of bias, prejudice, ill-will or partiality, as shown by the evidence of record." *Id.* at 10.

The best evidence rule provides: "An original writing, recording, or photograph is required in order to prove its content unless these rules, other rules prescribed by the Supreme Court, or a statute provides otherwise." Pa.R.E. 1002. Rule 1002 however "is subject to the exceptions found in Rule 1004:"

> Rule 1004. **Admissibility of Other Evidence of Content**:
>
> An original is not required and other evidence of the content of a writing, recording, or photograph is admissible if:
>
> > (a)   all the originals are lost or destroyed, and not by the proponent acting in bad faith;
> >
> > (b)   an original cannot be obtained by any available judicial process;
> >
> > (c)   the party against whom the original would be offered had control of the original; was at that time put on notice, by pleadings or otherwise, that the original would be a subject of proof at the trial or hearing; and fails to produce it at the trial or hearing; or
> >
> > (d)   the writing, record, or photograph is not closely related to a controlling issue.

*Commonwealth v. Green*, 162 A.3d 509, 518 (Pa.Super. 2017). Additionally, Rule 1002 only applies "if the Commonwealth must prove the contents of the writing, recording, or photograph to establish the elements of its case." *Id.*

Here, the trial court concluded that "even without Sergeant Grim's testimony that he observed [Shamberger] entering and exiting Best Buy, the Commonwealth produced ample evidence" to prove its case such as the receipts from the Best Buy where the victim's cards were used. TCO at 13.We agree and conclude that the video surveillance was not essential to establish the elements of the Commonwealth's case. While there was no testimony outside of the video that Shamberger was physically seen at the Best Buy, the facts viewed in the light most favorable to the Commonwealth give rise to the inference that either Scott or Shamberger used the victim's cards at the Best Buy. Whether Shamberger or Scott used the credit cards to purchase the merchandise, the act of purchasing those items is attributed to both of them because of the charge of conspiracy. *See Chambers*, 188 A.3d at 410. Therefore, we conclude that the best evidence rule did not apply in this case.

**DISCRETIONARY ASPECTS OF SENTENCE**

Shamberger also challenges the discretionary aspects of his sentence. Before we address the merits of this claim, we must engage in a four-factor analysis to determine whether: (1) the appeal is timely; (2) the issues

presented were properly preserved; (3) the brief satisfies Pa.R.A.P. 2119(f);[1] and (4) a substantial question is presented. ***See Commonwealth v. Radecki***, 180 A.3d 441, 467 (Pa.Super. 2018) (citing ***Commonwealth v. Moury***, 992 A.2d 162, 170 (Pa.Super. 2010)).

Shamberger's appeal is timely, he preserved the sentencing issue presented, his brief complies with Rule 2119(f), and he presents a substantial question. He maintains that the trial court imposed an aggravated sentence "without enumerating aggravating factors on the record," which raises a substantial question. ***See Commonwealth v. Booze***, 953 A.2d 1263, 1278 (Pa.Super. 2008).

The certified record belies Shamberger's argument that the trial court failed to place the aggravating factors of this case on the record. The court stated:

> [T]his [c]ourt noted, and stated on the record at the sentencing hearing, that [Shamberger] has a 35-year history of committing crimes against innocent victims. That history, as reflected in his pre-sentence report, includes multiple criminal acts constituting Access Device Fraud. Such behavior, despite previous stints in prison and the birth of a child, demonstrate that society needs to be protected from [Shamberger]. Therefore, a sentence was imposed to protect the community from [Shamberger's] criminal behavior, as well as to protect [Shamberger] from his own self-destructive behavior. Ultimately, incarceration is necessary for

---

[1] "An appellant who challenges the discretionary aspects of a sentence in a criminal matter shall set forth in a separate section of the brief a concise statement of the reasons relied upon for allowance of appeal with respect to the discretionary aspects of a sentence." Pa.R.A.P. 2119(f).

> [Shamberger] and is clearly warranted given his prior record score of 5.

TCO at 17. The record before us supports the trial court's decision to impose an aggravated sentence and we conclude that it did not abuse its discretion.

*IMPOSITION OF MULTIPLE SENTENCES FOR SINGLE ACT OF CONSPIRACY*

Shamberger argues that if any conspiracy was established, it "constitutes a single offense," and therefore the trial court erred by imposing sentence on three separate counts of conspiracy. We agree and the Commonwealth as well the trial court concedes the same. The facts of this case establish that Shamberger's conduct was "the object of a 'continuous conspiratorial relationship.'" **Commonwealth v. Davis**, 704 A.2d 650, 654 (Pa.Super. 1997) (citing 18 Pa.C.S.A. 903(c)). Therefore, the court could not impose a sentence for each count of conspiracy. **Id.** at 654-55. Thus, we vacate two counts of the three counts of conspiracy. However, because the trial court imposed a concurrent sentence for the conspiracy convictions, remand is not necessary**. See** TCO at 16; ("the [c]ourt sentenced him to 21 months to 5 years for Count 4 (Conspiracy to Commit Access Device Fraud) and ran the sentences for the two additional Conspiracy to Commit Access Device Fraud counts"); **see also Commonwealth v. Thur**, 906 A.2d 552, 569 (Pa.Super. 2006) ("if our decision does not alter the overall [sentencing] scheme, there is no need for a remand").

- 14 -

Judgment of sentence for conspiracy counts five and six vacated; judgment of sentence for remaining count of conspiracy, all counts of access device fraud, and false identification to law enforcement authorities affirmed.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 01/29/2019