J-S42005-22

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

COMMONWEALTH OF PENNSYLVANIA : IN THE SUPERIOR COURT OF
                                                :                PENNSYLVANIA
                                                :

                    v.                      :
                                                :
                                                :

DAVID JAMES MCCLELLAND        :
APPELLANT                       :
                                                :    No. 1191 WDA 2021

Appeal from the PCRA Order Entered September 8, 2021
In the Court of Common Pleas of Washington County Criminal Division at
No(s):  CP-63-CR-0001884-2011

BEFORE:   BOWES, J., OLSON, J., and COLINS, J.[*]

MEMORANDUM BY BOWES, J.:                    **FILED: MARCH 30, 2023**

David James McClelland appeals from the order dismissing his petition pursuant to the Post Conviction Relief Act ("PCRA").  We affirm the PCRA court's order.  However, because Appellant's conduct was the result of a single, continuous conspiratorial relationship to commit burglary, we vacate Appellant's sentences for conspiracy, and his convictions for conspiracy to commit the crimes of criminal homicide, dealing in proceeds of unlawful activity, robbery, and theft by unlawful taking. We hereby remand for resentencing on the charge of conspiracy to commit burglary.  Our decision here today does not disturb Appellant's convictions and sentences for second-

_____

[*] Retired Senior Judge assigned to the Superior Court.

degree murder, dealing in proceeds of unlawful activities, or receiving stolen property.[1]

This Court previously detailed the underlying factual and procedural history of this case. *See Commonwealth v. McClelland*, 133 A.3d 76 (Pa.Super. 2015) (unpublished memorandum) ("*McClelland I*"). Briefly, Appellant, along with his father, David A. McClelland, and his step-mother, Diane McClelland, "engaged in numerous burglaries and thefts of cash from the home of Evelyn Stepko, their elderly neighbor, who lived alone, beginning in August 2009 and continuing through July 18, 2011, when [Ms.] Stepko was found murdered in her home." *Id*. (unpublished memorandum at 1-2). Appellant, a municipal police officer at the time, received large amounts of cash from his father that he knew had been stolen from Ms. Stepko. Appellant asked for additional money, which he used at the casino and to purchase various items. He also received gifts of a vehicle and a house that were purchased with funds stolen from Ms. Stepko. *See id*. The McClellands were tried separately.

Prior to Appellant's jury trial, the Commonwealth tendered three plea offers: (1) ten to twenty years of incarceration in exchange for also testifying

---

[1] As will be explained further *infra*, Appellant was sentenced to life imprisonment without the possibility of parole for second-degree murder plus consecutive sentences for dealing in proceeds of unlawful activity, receiving stolen property, and conspiracy. Our disposition only affects Appellant's conspiracy sentence, which was imposed at the conspiracy to commit second-degree murder count. The four remaining conspiracy convictions merged with that count for sentencing.

against Mrs. McClelland; (2) twenty to forty years of incarceration; and (3) twenty-five to fifty years of incarceration. *See* N.T. PCRA Hearing, 7/22/21, at 9, 15, 30. All three plea offers required Appellant to plead guilty to third-degree murder, which he refused to do. Following the trial, the jury convicted Appellant of second-degree murder, dealing in proceeds of unlawful activity, receiving stolen property, and conspiracy to commit the crimes of criminal homicide, dealing in proceeds of unlawful activity, robbery, burglary, and theft by unlawful taking.

Appellant was sentenced to the following terms of incarceration: life imprisonment without the possibility of parole ("LWOP") for second-degree murder, two to four years for dealing in proceeds of unlawful activity, ten to forty years for the conspiracy charges,[2] and two to four years for receiving stolen property. All sentences were set to run consecutively to each other, for an aggregate sentence of life imprisonment plus fourteen to forty-eight years of incarceration. This Court affirmed Appellant's judgment of sentence and our Supreme Court denied his petition for allowance of appeal. *See id*., *appeal denied*, 138 A.3d 3 (Pa. 2016). Of relevance to the instant appeal,

---

[2] Although the court indicated it was imposing a sentence of ten to forty years of incarceration for all five conspiracy charges, the court commitment forms indicate that the incarceration sentence was only imposed at the conspiracy to commit criminal homicide charge, and the other conspiracy convictions merged for sentencing purposes.

Joshua Camson, Esquire, represented Appellant throughout the trial and direct appeal proceedings.[3]

In 2017, Appellant retained new counsel and timely filed the present PCRA petition, his first. Generally, Appellant argued that Attorney Camson provided ineffective assistance during three separate phases, namely: (1) pretrial, by providing deficient advice with regard to plea negotiations and for not requesting a change of venue or questioning of potential jurors; (2) trial, by failing to object to the court's definition of conspiracy as part of its second-degree murder jury instruction;[4] and (3) appeal, by failing to preserve in Appellant's Rule 1925(b) statement his challenge to the sufficiency of the evidence to support his convictions for conspiracy and second-degree murder. After filing notice of its intent to dismiss the petition without a hearing pursuant to Pa.R.Crim.P. 907, the PCRA court dismissed Appellant's petition.

On appeal to this Court, Appellant challenged the PCRA court's decision to dismiss, without a hearing, his PCRA petition. Finding it dispositive, we first considered whether the PCRA court erred in dismissing without a hearing Appellant's claim that Attorney Camson provided deficient advice during the plea negotiations. In this regard, Appellant had argued that Attorney Camson

_____

[3] We note that Attorney Camson was appointed to represent Appellant approximately five months before his jury trial commenced. Prior to Attorney Camson's appointment, Daniel Chunko, Esquire, represented Appellant.

[4] Appellant and the PCRA court generally refer to second-degree murder as felony murder. While the terms are interchangeable, we will utilize the more formal nomenclature within this memorandum and refer to this type of homicide as second-degree murder.

misadvised him as to what the Commonwealth needed to prove for a jury to convict Appellant of murder, misunderstood the Commonwealth's continuing-conspiracy theory of the case, and failed to inform Appellant of inculpatory evidence. *See Commonwealth v. McClelland*, 239 A.3d 109 (Pa.Super. 2020) (non-precedential decision at 6-7) ("*McClelland II*"). We agreed with Appellant's legal arguments and concluded that if the facts as alleged were true, counsel would arguably have rendered ineffective assistance. *See id*. (non-precedential decision at 8-10). However, because the PCRA court did not conduct a hearing, we could "not discern from the record before us evidence of what trial counsel advised Appellant during plea negotiations, and the relationship, if any, of trial counsel's actions and advice to Appellant's assertions of ineffectiveness." *Id*. (non-precedential decision at 11). Finding our review hindered, we vacated the PCRA court's order and remanded for an evidentiary hearing. *See id*. (non-precedential decision at 12); *see also id*. (non-precedential decision at 11) ("Issues of fact exist because we do not have a record of trial counsel's actions and advice during plea negotiations, [nor do we have] the basis for the PCRA court's conclusion that Appellant would never have accepted a plea." (cleaned up)).

On remand, the PCRA court held an evidentiary hearing, at which Appellant and Attorney Camson testified. Although not so limited by our remand directive, the evidentiary hearing solely related to Attorney Camson's representation during the plea proceedings; no testimony was elicited nor evidence offered with respect to Appellant's ineffectiveness claims as to the

court's jury instructions, change of venue or questioning of potential jurors, or issue preservation on appeal. The PCRA court ultimately dismissed Appellant's PCRA petition.

This timely filed appeal followed. Both Appellant and the PCRA court have complied with Pa.R.A.P. 1925. With the matter before this Court once again, Appellant presents the following issues for our consideration:[5]

I. Did the [PCRA] court abuse its discretion in denying the PCRA petition where trial counsel was ineffective for failing to object to the deficient jury instructions on conspiracy as it related to the [second-degree] murder charge?

II. Did the [PCRA] court abuse its discretion in denying the PCRA petition where [Appellant] established that he was denied the effective assistance of counsel during the plea bargaining stage of his criminal prosecution, specifically, his trial counsel failed to give him adequate, accurate and competent advice about whether to accept or reject a plea offer?

III. Did the [PCRA] court abuse its discretion in denying the PCRA petition where trial counsel was ineffective for not requesting a change of venue based on pretrial publicity, and for not requesting that the prospective juror be questioned regarding their impartiality after hearing a potential juror express his belief that [Appellant] was guilty; alternatively, was counsel ineffective for not raising the issue on appeal that the court abused its discretion in denying a motion for change of venire?

IV. Did the [PCRA] court abuse its discretion in denying the PCRA petition where counsel was ineffective for failing to preserve the issue for appeal that the evidence was insufficient as a matter of law to sustain the convictions of criminal conspiracy to commit burglary or robbery,

_____

[5] We note that these are the same issues Appellant had raised on appeal from the PCRA court's prior order dismissing this PCRA petition.

conspiracy to commit homicide – second degree murder, and second degree murder?

Appellant's brief at 4 (cleaned up).

We begin with our well-settled standard of review.[6]

> When reviewing the propriety of an order pertaining to PCRA relief, we consider the record in the light most favorable to the prevailing party at the PCRA level. This Court is limited to determining whether the evidence of record supports the conclusions of the PCRA court and whether the ruling is free of legal error. We grant great deference to the PCRA court's findings that are supported in the record and will not disturb them unless they have no support in the certified record. However, we afford no such deference to the post-conviction court's legal conclusions. We thus apply a *de novo* standard of review to the PCRA court's legal conclusions.

*Commonwealth v. Mojica*, 242 A.3d 949, 953 (Pa.Super. 2020) (cleaned up).

Appellant's PCRA claims all implicate the effective assistance of counsel. Thus, our review is also guided by the following principles. "When reviewing claims of ineffective assistance of counsel, courts must presume that counsel provided effective assistance." *Id*. at 955 (cleaned up). In order to overcome this presumption, a petitioner must "plead and prove that (1) the claim has arguable merit; (2) counsel lacked any reasonable basis for the action or

_____

[6] We note that the Commonwealth has asked this Court to dismiss the instant appeal because Appellant filed his brief and reproduced record late. *See* Commonwealth's brief at 13-14. "[T]he late filing of an appellate brief may result in sanctions from the appellate court, including . . . dismissal of the appeal, where the late filing impedes our review." *Clark v. Peugh*, 257 A.3d 1260, 1264 n.1 (Pa.Super. 2021) (cleaned up). While we do not condone the lateness of Appellant's filings, we decline to dismiss the instant appeal as Appellant's tardiness has not impeded our review. *See id*.

inaction; and (3) the petitioner suffered prejudice as a result." *Id*. (cleaned up). "Failure to satisfy any prong of the test will result in rejection of the appellant's ineffective assistance of counsel claim." *Id*. (cleaned up).

Appellant first argues that the PCRA court erred in dismissing his claim that Attorney Camson was ineffective for failing to object to the conspiracy portion of the trial court's second-degree murder jury instruction. *See* Appellant's brief at 9. Whether the underlying claim has legal merit is governed by the following principles:

> In examining jury instructions, our standard of review is to determine whether the trial court committed a clear abuse of discretion or an error of law controlling the outcome of the case. A charge will be found adequate unless the issues are not made clear, the jury was misled by the instructions, or there was an omission from the charge amounting to a fundamental error. Moreover, in reviewing a challenge to a jury instruction the entire charge is considered, not merely discrete portions thereof. The trial court is free to use its own expressions as long as the concepts at issue are clearly and accurately presented to the jury.

*Commonwealth v. Bradley*, 232 A.3d 747, 759 (Pa.Super. 2020) (cleaned up).

Turning to the relevant portion of the court's instructions, after defining malice and the possible verdicts for the general charge of criminal homicide, the court provided the following instruction regarding second-degree murder:

> For murder of the 2nd degree or felony murder, 2nd degree murder as commonly called, a killing is with malice if the perpetrator engages in one of certain enumerated felonies, including robbery and burglary, and a killing occurs.

Since the law, through the felony murder rule allows the finder of fact, the jury, to infer that the killing was malicious from the fact that the actor was engaged in a felony, such as robbery or burglary, of such a dangerous nature to human life that the perpetrator is held to the standard of a reasonable man, knew or should have known that death might result from that felony.

. . . .

I will now define 2nd degree murder. I will start with some terminology and basic principles. The more serious types of crimes in our states are called felonies. For example, burglary and robbery are felonies. 2nd degree murder is often called felony murder because it's a killing connected with a felony. When two people are partners in a successful or unsuccessful attempt to commit a felony, and one of them kills a third person, both partners may be guilty of felony murder. Neither partner has to intend to kill, nor anticipate that anyone will be killed.

The defendant has been charged with 2nd degree murder, that is felony murder. To find the defendant guilty of this offense, you must find that the following four elements have been proven beyond a reasonable doubt:

First, that the defendant. . . and/or his co[-]defendant, David A. McClelland, killed or caused the death of Evelyn Stepko.

Second, that the defendant. . . and/or his co-felon. . . did so while he and co-felon were partners in committing certain burglaries or robberies.

Third, that the defendant. . . and/or his co-felon. . . did the act that killed or caused the death of Evelyn Stepko in furtherance of the burglary and/or robbery.

Fourth, that the defendant was acting with malice. You may find that the defendant was acting with malice if you are satisfied beyond a reasonable doubt that he and David A. McClelland were partners in committing the burglary and/or robbery. Because burglary and robbery are crimes that are inherently dangerous to human life, there does not have to be any other proof of malice for 2nd degree murder.

I shall now define burglary and robbery for you. The defendant has been charged with 2nd degree murder and this also relates to the conspiracy to commit burglary, which I will get to shortly.

I will now define the elements of burglary [and robbery] as it relates to these charges.

. . . .

Going back to the requirement that the defendant and David A. McClelland were partners in committing the burglary and/or robbery, I instruct you that the two of them were partners if they conspired to commit the burglary and/or robbery. Two or more people conspire to commit a crime if with the intent of encouraging or helping the commission of the crime, they agree that one or all of them will commit the crime or that one of them will help the others in planning it and committing it. Their agreement may be express and verbal, they may actually talk about it, or their agreement may be an unspoken agreement that can be inferred from their words and their conduct and the surrounding circumstances. Each knows what the other is thinking, they don't have to talk about it.

Finally, to commit the conspiracy, one of the conspirators must commit what the law calls an overt act. An overt act is an act by any member of the conspiracy that would serve to further the goal of the conspiracy. Here, the Commonwealth contends that the burglary and the robbery and the murder were such overt acts.

I shall now explain the meaning of in furtherance as it relates to 2nd degree murder. A partner's act that kills is considered to be in furtherance of the felony even though such crime was not contemplated or approved by the parties, if it was the natural and probable consequence of the partner's conduct. A partner's act that kills is not in the furtherance of the felony if the partner does the act for his or her own personal reasons that are independent of the felony.

N.T. Jury Trial Volume VII, 4/9/13, at 1162-1168 (cleaned up). Four pages

later, after defining the charged choate crimes, the court instructed the jury

on conspiracy as it related to the crimes of criminal homicide, dealing in proceeds of unlawful activities, robbery, burglary, and theft by unlawful taking:

> In Pennsylvania, joining in a conspiracy or creating a conspiracy is itself a crime. Even if the crime the people are planning is not carried out, the members of the conspiracy are still responsible for the distinct crime of conspiracy.
>
> In general terms, a conspiracy is an agreement between two or more persons to commit a crime. A conspiracy exists once two conditions are met. One, there is an agreement and two, one of the members then commits some act to help achieve the goal of the conspiracy.
>
> I will now explain each of these elements in greater detail. The first element of conspiracy is an agreement. It can be stated in words or unspoken but acknowledged, but it must be an agreement in the sense that two or more people have come to an understanding that they agreed to act together to commit a crime or crimes. Their agreement does not have to cover the details of how the crime will be committed, nor does it have to call for all of them to participate in actually committing the crime. They can agree that one of them will do the job.
>
> What is necessary is that the parties do agree, in other words, do come to a firm, common understanding that a crime will be committed. Although the agreement itself is the essence of the conspiracy, a defendant cannot be convicted of conspiracy unless he or she or a fellow conspirator does something more, an overt act in furtherance of the conspiracy. The overt act is an act by any member of the conspiracy that would serve to further the goal of the conspiracy.
>
> The overt act can be criminal or non-criminal itself as long as it is designed to put the conspiratorial agreement into effect. This is to show that the parties have a firm agreement and are not just thinking or talking about committing a crime.
>
> The overt act shows that the conspiracy has reached the action stage. If a conspirator actually commits or attempts to

commit the agreed crime, that, obviously, would be an overt act in furtherance of the conspiracy.

But a small act or step that is much more preliminary and a lot less significant can also satisfy the overt act requirement.

The Commonwealth may prove a conspiracy by direct evidence or by circumstantial evidence. People who conspire often do their conspiring secretly and try to cover up afterwards. In many conspiracy trials, circumstantial evidence is the best or only evidence on the question of whether there was an agreement, that is, a common understanding, and whether the conspirators shared the intent to promote or facilitate committing the object crime. Thus, you may, if you think proper, you may infer that there was a conspiracy from the relationship, the conduct, and acts of the defendant and his alleged coconspirators and the circumstances surrounding their activities. However, the evidence of this must support your conclusion beyond a reasonable doubt.

A defendant cannot be convicted because he was present with others or even knew that other or others planned or were doing – there must be proof of an agreement between the defendant and another person or persons to form or continue a conspiracy.

To be proved guilty of being a conspirator, the defendant must have intended to act jointly with the others charged and must have intended that the crimes alleged to be the goal of the conspiracy would be committed.

There is a way that one defendant may be criminally responsible for the conduct committed by another person or persons. This way may apply even if the defendant in question was not present at the time and place when the particular act occurred.

This way is for the defendant to be a member of a conspiracy. I have just defined for you what a conspiracy is and how it is proved. For our purposes now, to reiterate, it is enough to understand that a the [*sic*] conspiracy exists when two or [more] people agree to commit a crime or series of crimes and one commits an act to further the goal of that agreement.

As applied in this case, if it is proved beyond a reasonable doubt that the defendant was indeed a member of the conspiracy, he may be held responsible for the act or acts of another person or persons if each of the following elements is proven beyond a reasonable doubt:

One, that the other person who committed a specific act was also a member of the same conspiracy.

Two, that the crime in question was committed while the conspiracy was in existence.

And three, that the crime in question was committed to further the goals of the conspiracy.

A specific crime is considered to be in furtherance of the goals of the conspiracy, even though such crime was not contemplated or approved by the parties, if it was the natural and probable consequence of a co[-]conspirator's conduct.

*Id*. at 1172-1176 (cleaned up). Additionally, the court advised the jurors not to "single out any individual rule or instruction and ignore the others. . . . Consider all my instructions as a whole and each in light of the other instructions when you are deliberating." *Id*. at 1161.

Instantly, Appellant takes issue with the abbreviated definition of conspiracy given during the second-degree murder instruction. While he concedes that "[a] more complete charge on criminal conspiracy [wa]s given later" with respect to the charged crimes of criminal conspiracy, he contends that because the definitions differed, "the jury could have believed that two separate definitions applied – one for proving [second-degree] murder and one for proving criminal conspiracy to commit one or more of the other offense[s]." Appellant's brief at 14 (cleaned up). By not including portions of

- 13 -

the suggested standard jury instruction for conspiracy as part of its instruction for second-degree murder, Appellant posits that the jury could find an agreement existed based solely on Appellant's awareness of his father's criminal actions, and that circumstantial evidence did not need to be proven beyond a reasonable doubt. *See id*. at 15. In other words, Appellant asserts that by only partially instructing the jury on conspiracy in connection with second-degree murder, the court "relieved the Commonwealth of its burden to prove beyond a reasonable doubt that Appellant and his father had a shared intent to commit the robbery or the burglary." *Id*. at 12. Finally, Appellant challenges the court's statement during the second-degree murder instruction that "[e]ach knows what the other is thinking, they don't have to talk about it." N.T. Jury Trial Volume VII, 4/9/13, at 1167.

The PCRA court rejected Appellant's claim, finding that the trial court accurately instructed the jury on the relevant law. *See* PCRA Court Opinion, 3/22/22, at 21. To wit, "[t]he trial court gave a brief description of conspiracy while explaining [second-degree] murder, which was taken from the standard jury instruction, and then subsequently a fuller, more detailed description of conspiracy which mirrors the standard jury instruction for conspiracy." *Id*. (footnotes omitted). Moreover, the PCRA court found that "[t]he two instructions clearly go hand in hand with one another, as the more detailed instruction is meant to expound on the more succinct instruction." *Id*. at 22. Read as a whole, the court concluded that the instructions were given in a

way that "made it abundantly clear to the jury what was necessary to prove conspiracy for the crimes charged." *Id*. Finding that the underlying claim lacked arguable merit, the PCRA court dismissed this ineffectiveness claim.

Upon review, we agree with the analysis of the PCRA court. First, the trial court's second-degree murder instruction is nearly identical to the suggested standard jury instruction for second-degree murder under the second alternative, killing by a defendant's co-felon. *See* Pa. SSJI (Crim), § 15.2502B. In fact, it is this suggested standard jury instruction that recommends the complained-of language regarding a co-conspirator knowing what the other co-conspirator is thinking without having to first discuss it. *See id*. While the suggested standard jury instructions are not binding and the trial courts retain discretion to mold their own instructions, they nonetheless act as guides. *See Commonwealth v. H.D.*, 247 A.3d 1062, 1064 (Pa. 2021).

We also disagree with Appellant's position that the trial court lessened the Commonwealth's burden in proving second-degree murder because it did not include specific portions of the conspiracy instruction at the same time as the second-degree murder instruction. First, the allegedly omitted portions were clearly communicated to the jury as part of the conspiracy instruction, which also largely tracked the suggested standard jury instruction with respect to the crime of conspiracy. *See* Pa. SSJI (Crim), § 12.903A. Moreover, the conspiracy instruction was provided mere minutes after instructing the jury

on second-degree murder. *See* N.T. Jury Trial Volume VII, 4/9/13, at 1162-68 (second-degree murder instruction), 1174-75 (relevant portion of the conspiracy instruction).

When read as a whole, the court's instructions, which were in parity with the suggested standard jury instructions, clearly conveyed what the Commonwealth was required to prove for Appellant to be found guilty of second-degree murder and conspiracy, and that all elements must be proven beyond a reasonable doubt. *See* 18 Pa.C.S. §2502(b); 18 Pa.C.S. § 903; ***Commonwealth v. Prosdocimo***, 578 A.2d 1273, 1276-77 (Pa. 1990) (holding that where "the jury charge closely tracked the language of the suggested standard jury instructions for the crimes of, *inter alia*, second-degree murder, it was "accurate, adequate, and sufficiently clear to inform the jury of the law applicable to the case"). Since the record supports the PCRA court's conclusion that the underlying claim lacked merit, the PCRA court properly dismissed this claim without a hearing.

Appellant next argues that the PCRA court erred in denying his claim that Attorney Camson provided ineffective assistance of counsel in connection with the plea proceedings. *See* Appellant's brief at 17. As noted hereinabove, this argument is threefold: (1) Attorney Camson misadvised Appellant as to what the Commonwealth needed to prove for a jury to convict him of murder; (2) Attorney Camson misunderstood the Commonwealth's continuing-conspiracy theory of the case; and (3) Attorney Camson failed to inform

Appellant of inculpatory evidence placing him at Ms. Stepko's home in connection with the burglaries. As discussed, this Court previously held that if the facts as alleged by Appellant were true, Attorney Camson would arguably have rendered ineffective assistance. *See **McClelland II***, *supra* (non-precedential decision at 8-10).

Following an evidentiary hearing on these arguments on remand, Attorney Camson testified regarding his representation of Appellant in preparing for trial and negotiating a potential plea. The PCRA court found the testimony of Attorney Camson credible. Specifically, the court found "[t]here was no credible evidence that Attorney Camson misadvised [Appellant] regarding the charges, the evidence against him, or the plea offers. The court found that [Appellant] understood the defense strategy and made an informed decision to reject the plea offers and subject himself to trial." PCRA Court Opinion, 3/22/22, at 14. Moreover, the court found the testimony from the hearing made it clear that Appellant would not accept a plea offer that included a guilty plea to homicide and the Commonwealth was likewise unwilling to offer any plea that **did not** include a guilty plea to homicide. Thus, the PCRA court rejected Appellant's testimony that he would have accepted one of the plea offers from the Commonwealth absent counsel's supposedly-deficient advice. *See **id**. at 14-15.

Upon review of the certified record, we find that the PCRA court's credibility determinations are supported by the record. *See **Commonwealth***

*v. Robinson*, 82 A.3d 998, 1013 (Pa. 2013) ("It is well-settled that a PCRA court's credibility determinations are binding upon an appellate court so long as they are supported by the record."). Since the underlying claims lack merit, we conclude that the PCRA court did not err in denying the ineffectiveness claims pertaining to the plea proceedings.

In Appellant's third issue, he argues that the PCRA court erred in dismissing his claim that Attorney Camson was ineffective for failing to file a motion for change of venue based on pretrial publicity and in failing to request appropriate questioning of prospective jurors. *See* Appellant's brief at 36. We begin with the pretrial publicity claim. According to Appellant, "[b]ecause the crime occurred in a rural community, the three alleged perpetrators were related, and were neighbors of the elderly victim, and one of the suspects [(Appellant)] was a police officer, the incident received wide coverage in the newspapers, on television and on the internet." Appellant's brief at 36. Based on this pretrial publicity, which included his father's guilty plea to first-degree murder and his stepmother's conviction for conspiracy to commit criminal homicide, Appellant contended that counsel rendered ineffective assistance by failing to file a motion for a change of venue. *Id*. at 35-36.

At the outset, we note that the mere existence of pretrial publicity is not *per se* prejudicial. *See Commonwealth v. Tanner*, 205 A.3d 388, 393 (Pa.Super. 2019). Rather, the relevant inquiry is "whether any juror formed a fixed opinion of the defendant's guilt or innocence as a result of the pre-

trial publicity." ***Id***. (cleaned up). As a general rule, a trial court has wide discretion in assessing a motion for a change of venue and "what prospective jurors tell [the trial court] about their ability to be impartial will be a reliable guide to whether the publicity is still so fresh in their minds that it has removed their ability to be objective." ***Id***. (cleaned up). In order for pretrial publicity to be considered presumptively prejudicial, a defendant must prove two things:

> [F]irst, either that a) the publicity is sensational, inflammatory, and slanted towards conviction rather than factual or objective; b) the publicity reveals the accused's prior criminal record, if any, or if it refers to confessions, admissions, or reenactments of the crime by the accused; or c) the publicity is derived from police and prosecuting officer reports; and, secondly, that the publicity must be so extensive, sustained, and pervasive without sufficient time between publication and trial for the prejudice to dissipate, that the community must be deemed to have been saturated.

***Commonwealth v. Rucci***, 670 A.2d 1129, 1140–41 (Pa. 1996).

Appellant argues that the "news stories were inherently prejudicial because readers and/or viewers could infer that because two of the alleged co-conspirators were guilty, then so must the third be guilty." Appellant's brief at 44. The PCRA court rejected this argument, concluding that "[t]his type of media coverage was not slanted toward [Appellant]'s conviction, but was merely coverage of the co-defendants' cases, and did not in any way imply that [Appellant] should also be found guilty of his charges." PCRA Court Opinion, 3/22/22, at 23-24. Indeed, the PCRA court, which also acted as the trial court, found that based on Appellant's arguments it would have rejected

- 19 -

any pretrial motion for change of venue. *See id*. at 23. Thus, the PCRA court dismissed this claim of ineffectiveness as the underlying claim lacked merit.

The certified record supports the PCRA court's conclusions. By way of background, during jury selection, twenty-three panel members indicated that they had heard about the case. *See* N.T. Jury Selection, 4/1/13, at 16-17. Those individuals were subjected to individual *voir dire* to determine whether they could nonetheless be empaneled as jurors. Of those, three were struck for cause based on a pre-formed opinion, two were challenged for cause but overruled by the trial court because they stated that they could put aside their pre-formed opinion and base a decision solely on the evidence presented, and the remainder were unchallenged based on statements that they either had no pre-formed opinion or could base their decision solely on the evidence presented at trial. *See id*. at 35-36, 44-48, 51, 53, 59-66, 84-88, 93, 96-111, 120-21, 125-26, 131-32, 135-36, 138, 148-49, 153. Thus, the record bears out that the pretrial publicity was not so pervasive or prejudicial as to warrant a change in venue. Since any motion for change of venue would have been meritless, counsel will not be deemed ineffective for failing to file it. Accordingly, the PCRA court did not err in dismissing this portion of Appellant's ineffectiveness claim.

The second portion of this issue concerns questioning of potential jurors regarding a specific matter. For context, during the individual *voir dire* of prospective jurors who had raised their hands in response to various

questions, including exposure to pretrial publicity, one juror, when asked at sidebar whether he could set aside what he had heard on the news and make a decision solely based on the evidence presented responded, "I think the guy is guilty as hell to tell you the truth." *Id*. at 66. After being admonished by the trial court, the juror was removed to the hallway and the following exchange occurred at sidebar:

| Mr. Camson: | I mean, I'm probably going to make a motion on that one. |
| --- | --- |
| Mr. Lucas: | No objection. |
| The Court: | Obviously, we are going to strike him. I'm going to ask if anyone heard the comments. |
| Mr. Camson: | Based on the audible gasps, I would say they did. |
| The Court: | Some of them did. We will get everyone to respond and then we will take that up on the next round. |
| Mr. Camson: | Sounds good. |
| The Court: | I don't know that it's enough to dismiss the whole panel. |
| Mr. Camson: | I think we will see what they say. |
| The Court: | That's what I'm thinking. We still have to go through this process. What do you think? |
| Mr. Lucas: | I think the question needs to be asked of the entire panel, because I heard audible responses, too. |

. . . .

- 21 -

The Court: Ladies and gentleman, we are going to take a break so that everyone can have a lunch break.

. . .

But before we break, I want to ask you, I need to ask you another question as a group.

Obviously, some of you heard, although we try to do this at side-bar, some of you heard the comment of Juror No. 280, expressing his idea or his opinion of the case, and even though you probably didn't hear that he didn't know anything but what he heard on the news, I have to ask you, as [a] group, how many of you heard the comments of Juror No. 280, expressing his opinion? Everyone? Almost everyone.
All right. I think we are going to - - let's put your hands down. Who did not hear what Juror 280 said?

[Thereafter, six jurors responded that they had not heard the juror's statement.]

The Court: . . . [O]bviously, his opinion that he expressed is not, in any way, based on any evidence or anything material, so what I'll be asking you is whether you can put that aside and make your own mind up, based on the evidence that you hear in the courtroom.

*Id*. at 67-69. During subsequent individual *voir dire*, the prospective jurors who had heard the juror's unsolicited comment all conveyed that the statement did not impact their ability to be fair and impartial.[7] *See id*. at 74-

_____

[7] To the extent Appellant's version of these events differs, it is belied by the record. *See* Appellant's brief at 44-45 (setting forth that the juror responded, "Hell no, I think he's as guilty as sin," that only one potential juror indicated that she did not hear the comment, and that the record is silent as to whether the other potential jurors were questioned regarding their ability to set aside what they heard and render a verdict solely on the evidence presented).

75, 79-80, 83, 91-92, 96, 105, 108, 111, 120, 124-25, 131, 135, 137, 142-43, 153, 162, 164, 168, 171, 176, 179, 181-83, 187, 191.

Presently, Appellant contends that counsel rendered ineffective assistance by "fail[ing] to question the prospective jury members about whether they could disregard one prospective juror's opinion that [Appellant] was guilty[.]" Appellant's brief at 45. The PCRA court dismissed this claim for lack of merit "because each juror who heard the comment at issue was questioned about their ability to be impartial[.]" PCRA Court Opinion, 3/22/22, at 27. The certified record bears out that the trial court **did** independently question the jurors who heard the comment as to their ability to set aside the overheard comment and instead base their decision, fairly and impartially, solely on the evidence presented at trial. As our review of the record directly contradicts Appellant's version of what happened and the claim itself lacks merit as the court specifically did what Appellant wanted Attorney Camson to ask the court to do, we conclude that the PCRA court did not err in dismissing this claim.

In Appellant's last issue, he argues that the PCRA court erred in denying relief on his claim that Attorney Camson was ineffective for failing to preserve Appellant's sufficiency claims on appeal regarding conspiracy to commit burglary, conspiracy to commit robbery, conspiracy to commit second-degree murder, and the choate crime of second-degree murder. **See** Appellant's brief at 46. Appellant contends that his conviction for second-degree murder

cannot stand because "the Commonwealth failed to prove beyond a reasonable doubt that [Appellant] and his father (or stepmother) agreed that [Appellant] was to aid his father in the commission of . . . either robbery or a burglary[.]" *Id*. at 49; *see also id*. at 58 (arguing that Appellant "cannot be held liable for the acts of his father" because "the evidence was insufficient to prove beyond a reasonable doubt a conspiracy to commit robbery or burglary"). Specifically, Appellant claims that the Commonwealth's circumstantial evidence failed to establish either an agreement to commit a series of robberies or burglaries, or a shared criminal intent. *See id*. at 50-51. Finally, Appellant challenges his conviction for conspiracy to commit second-degree murder "[b]ecause the Commonwealth did not present any evidence that [Appellant] conspired to kill the victim[.]" *Id*. at 61.

We begin with Appellant's claim that Attorney Camson was ineffective for failing to preserve his appellate challenge to the sufficiency of his conviction for conspiracy to commit burglary. The PCRA court found significant direct and circumstantial evidence to prove that Appellant conspired to commit burglary with his father and step-mother. *See* PCRA Court Opinion, 3/22/22, at 29-42. As summarized by the PCRA court:

> [Appellant] admits that he was aware of the burglaries and the source of the cash and vehicle he received. [Appellant] was a police officer throughout the time of the burglaries and could have reported and stopped the criminal activity, but chose not to. Instead, [Appellant] accepted the cash proceeds and even asked for additional cash, informing his father and stepmother that he was having financial difficulties. In addition, [Appellant] accepted money for gambling at the casino, accepted a car which he knew

- 24 -

had been purchased with proceeds of the burglaries, and would occasionally pay other municipal police officers to cover his shifts when he did not feel like working. By asking for more money, knowing its source, [Appellant] was essentially asking his father to commit additional burglaries and certainly promoting the criminal conspiracy. Additionally, [Appellant] admitted discussing cover stories with his father, so the three co-conspirators could be prepared to explain a legitimate source of the cash. [Appellant] admittedly lied to the police when asked about his involvement in order to minimize his own culpability. By these actions and through his position as a police officer, [Appellant] aided and abetted his co-conspirators, in addition to receiving the stolen funds.

. . . .

. . . [Appellant] admitted lying to protect his father and admitted using his position as a police officer to act as a "lookout" for any reports or information regarding the burglaries.

*Id*. at 35, 37. Additionally, a neighbor identified an individual leaving Ms. Stepko's home following one of the burglaries as matching Appellant's description and walking towards Appellant's house, and an individual matching Appellant's description deposited a large sum of cash into Mrs. McClelland's bank account in 2009. *See* N.T. Jury Trial Volume III, 4/3/13, at 320-23; N.T. Jury Trial Volume IV, 4/5/13, at 751-53. Based on the foregoing, the PCRA court dismissed this claim as without merit.

Upon review, the certified record supports the PCRA court's conclusions that there was ample evidence to support Appellant's conviction for conspiracy to commit burglary. As the underlying claim lacked merit, counsel could not be deemed ineffective for failing to preserve a sufficiency issue on appeal with regard to conspiracy to commit burglary. *See Commonwealth v. Busanet*,

54 A.3d 35, 49 (Pa. 2012) (finding appellate counsel was not ineffective for failing to preserve a meritless issue on appeal). Furthermore, Appellant's challenge to his second-degree murder conviction is premised only on the Commonwealth's inability to prove conspiracy to commit burglary or robbery. Thus, the PCRA court concomitantly did not err in dismissing Appellant's claim that counsel was ineffective for failing to preserve a challenge to the sufficiency of the evidence to sustain his second-degree murder conviction as the evidence was sufficient to support Appellant's conspiracy to commit burglary conviction.

Before turning to Appellant's remaining sufficiency challenges, we *sua sponte* address the legality of his judgment of sentence for multiple conspiracy counts. *See Commonwealth v. Barnes*, 871 A.2d 812, 821 n.6 (Pa.Super. 2005) (noting this Court may *sua sponte* address the propriety of multiple conspiracy convictions where there is a single conspiracy because a violation of 18 Pa.C.S. § 903(c) results in an illegal sentence). In doing so, we are guided by this Court's seminal decision in *Commonwealth v. Rivera*, 238 A.3d 482 (Pa.Super. 2020).

In *Rivera*, a victim was shot and killed during a home invasion robbery conducted by Rivera and three of his compatriots. The three compatriots testified at Rivera's jury trial, detailing their plan to rob the victim and the unfolding of events during the robbery that led to the victim's death. The jury convicted Rivera of second-degree murder, robbery, burglary, and conspiracy

to commit the crimes of second-degree murder, robbery, and burglary. On appeal to this Court, Rivera challenged the trial court's preclusion of a videotaped interview, the sufficiency and weight of the evidence, the discretionary aspects of his sentence, and the constitutionality of second-degree murder. Upon review, Rivera waived his sufficiency and weight claims and failed to preserve his challenge to the discretionary aspects of his sentence. His remaining issues garnered no relief. However, this Court *sua sponte* addressed the legality of Rivera's sentences for multiple conspiracy counts and granted relief on that basis. ***See id***. at 503-04. For the reasons discussed *infra*, we reach the same conclusion here.

The conspiracy statute provides that "[i]f a person conspires to commit a number of crimes, he is guilty of only one conspiracy so long as such multiple crimes are the object of the same agreement or continuous conspiratorial relationship." 18 Pa.C.S. § 903(c). Thus, to be convicted of multiple counts of conspiracy, "there must be separate agreements, or separate conspiratorial relationships, to support each conviction." ***Rivera***, ***supra*** at 503 (cleaned up). In analyzing the totality of the circumstances to determine whether there exists a single or multiple conspiracies, we consider several factors:

> the number of overt acts in common; the overlap of personnel; the time period during which the alleged acts took place; the similarity in methods of operation; the locations in which the alleged acts took place; the extent to which the purported conspiracies share a common objective; and, the

degree to which interdependence is needed for the overall operation to succeed.

*Id*. (cleaned up).

In *Rivera*, we discussed the application of these factors in two prior cases, *Commonwealth v. Davis*, 704 A.2d 650 (Pa.Super. 1997), and *Barnes*, *supra*. In *Davis*, the defendant, who was sentenced separately for conspiracy to commit robbery and conspiracy to commit third-degree murder, argued that he could not be "punished twice" because "he and his cohorts entered into only one agreement[.]" *Davis*, *supra* at 654. This Court agreed, applying the above factors as follows:

> The agreement among the participants in this case to use a baseball bat on their victim encompassed both their plan to harm him while taking his money (robbery) and their plan to harm him with such disregard to the value of human life as to constitute malice, which resulted in death (third-degree murder). The same acts were done to accomplish both results, the same actors took part, the acts occurred simultaneously at the same location, the same method was employed and the same objective was pursued. We find that these facts constitute the very circumstances envisioned by § 903(c). The "essential feature of the existing conspiracy was a common plan or scheme to achieve a common, single, comprehensive goal." *Commonwealth v. Troop*, 391 Pa.Super. 613, 571 A.2d 1084, 1090, *appeal denied,* 526 Pa. 634, 584 A.2d 317 (1990).[2]
>
> _____
> [2] We observe that the facts of this case are unlike those in *Troop, supra.* There, a panel of this court found that the conspirators planned three separate robberies independently of one another, each of which constituted a separate criminal episode.
>
> We conclude therefore that appellant cannot be punished separately for each conspiracy; multiple sentences under these circumstances are explicitly precluded by statute. 18 Pa.C.S.A. § 903(c).

*Id*. at 654–55.

In **Barnes**, the defendant was convicted of, *inter alia*, conspiracy to commit the crimes of third-degree murder, robbery, and delivery of a controlled substance. On appeal, Barnes "argued he was convicted under a multiple conspiracy theory but, for various reasons, the evidence was insufficient to support his convictions for conspiracy to commit robbery and conspiracy to commit third-degree murder." **Barnes**, *supra* at 821 n.6. This Court granted relief pursuant to 18 Pa.C.S. § 903(c) because we *sua sponte* found that his "sentence was illegal because he can, by statute, be convicted of only one count of conspiracy under the facts of this case." **Id**. In so holding,

> [w]e note[d] that even if evidence suggested [Barnes] and his co-defendants agreed to commit several offenses, if a person conspires to commit a number of crimes, he is guilty of only one conspiracy so long as such multiple crimes are the object of the same agreement or continuous conspiratorial relationship. Accordingly, for [Barnes] to be convicted of three counts of conspiracy, there must be separate agreements, or separate conspiratorial relationships, to support each conviction.

**Id**. at 820 (cleaned up).

In **Rivera**, this Court found that the defendant's conduct was the result of a "continuous conspiratorial relationship." **Rivera**, *supra* at 504 (internal quotation marks omitted). Specifically,

> The agreement among [Rivera] and his co-defendants to rob Victim at gunpoint encompassed their plan to break into Victim's home (burglary) and take his money and drugs at gunpoint

(robbery). The homicide (second-degree murder) that occurred during the robbery was in furtherance of the single conspiratorial goal: to rob Victim. As such, under subsection 903(c), [Rivera] only could be found guilty of conspiracy to commit robbery, "that crime being the underlying foundation of the agreement upon which the conspiracy charges were based." *Barnes*, 871 A.2d at 821. Accordingly, we vacate [Rivera's] conspiracy to commit burglary and conspiracy to commit second-degree murder convictions.

*Id*.

With the foregoing in mind, we apply the above factors to the case at hand. Upon review, we conclude that Appellant, his father, and his stepmother did not engage in multiple conspiracies. As demonstrated by the criminal information, Appellant was engaged in a single, continuing conspiratorial relationship with his father and step-mother. *See* Information, 10/3/11 (charging Appellant for conduct occurring between August 4, 2009 and July 18, 2011, instead of each individual instance of criminal conduct). To that end, the evidence presented at trial established an ongoing agreement among the parties to burglarize Ms. Stepko's home for as much money as they could seize. Specifically, the agreement to take money from Ms. Stepko's home encompassed their plan to break into her home to steal money (burglary), distribute that money amongst themselves (theft by unlawful taking), and use the proceeds for their own benefit (dealing in proceeds of unlawful activity). The force against Ms. Stepko (robbery) and homicide (second-degree murder) that occurred during the final burglary were in furtherance of the single conspiratorial goal: to take money from Ms. Stepko's

- 30 -

home without being caught. As such, under § 903(c) and the foregoing case law, Appellant could only be found guilty of conspiracy to commit burglary, "that crime being the underlying foundation of the agreement upon which the conspiracy charges were based." **Barnes**, **supra** at 821.

Based on the foregoing, we vacate Appellant's convictions and sentences for conspiracy to commit second-degree murder, conspiracy to commit robbery, conspiracy to commit dealing in proceeds of unlawful activity, and conspiracy to commit theft by unlawful taking. We observe that Appellant was sentenced to a consecutive term of ten to forty years of incarceration for conspiracy to commit second-degree murder and that all of the other conspiracy convictions merged into that for sentencing purposes. Since we are setting aside the sentence for conspiracy to commit second-degree murder, we remand solely for resentencing on Appellant's conviction for conspiracy to commit burglary.[8]

Since we vacate these conspiracy convictions, we do not address whether the PCRA court erred in dismissing Appellant's claim that counsel was ineffective for failing to preserve a sufficiency challenge to those convictions

---

[8] Practically speaking, Appellant cannot serve a sentence of incarceration following the expiration of his LWOP term. Thus, our holding, which vacates the consecutive conspiracy sentence, does not upset Appellant's overall sentencing scheme, which is subsumed by his LWOP sentence. **See Commonwealth v. Rivera**, 238 A.3d 482, 504 (Pa.Super. 2020). Accordingly, we decline to vacate the entirety of Appellant's judgment of sentence and instead remand only for resentencing regarding Appellant's conviction for conspiracy to commit burglary.

on appeal. In all other regards, we affirm the order of the PCRA court and the remainder of Appellant's judgment of sentence remains intact.

Order affirmed. Judgment of sentence for conspiracy charges vacated. Convictions for conspiracy to commit second-degree murder, conspiracy to commit robbery, conspiracy to commit dealing in proceeds of unlawful activity, and conspiracy to commit theft by unlawful taking vacated. Case remanded for resentencing on the conspiracy to commit burglary conviction. Jurisdiction relinquished.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 3/30/2023